Cecelia Ann WRIGHT, Appellant,

v.

Troy Don ECKHARDT, Appellee.

No. 13–99–429–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 9, 2000.

James M. Martin, Corpus Christi, for Appellant.

John A. Rank III, Law Offices of John A. Rank, III, Corpus Christi, for Appellee.

Before Chief Justice SEERDEN and Justices DORSEY and RODRIGUEZ.

## OPINION

Opinion by Chief Justice SEERDEN.

Cecilia Ann Wright and Troy Don Eckhardt were divorced in 1994. The divorce decree awarded Wright one-half of Eckhardt's employment retirement benefits, including those benefits derived from Eckhardt's service in the United States Navy. Eckhardt's military retirement benefits were the subject of two subsequent clarification orders, the latter of which is the subject of this appeal. We reverse and render.

*Factual and Procedural Background*

The original divorce decree entered on March 3, 1994, awards Wright one-half of all of Eckhardt's employment retirement benefits, including his military retirement pay. The decree provides as follows:

> Cecilia Ann Eckhardt [1] is awarded the following property, and Troy Don Eckhardt is divested of all right, title and interest in and to such property:
>
> . . .

---

1. The divorce decree provides that Cecilia Ann Eckhardt's name will change to Cecilia Ann Wright; however, the decree uses the names interchangeably.

6. One-half (½) of all IRAs, employment retirement benefits, pension plans, and the like accumulated during the employment of Troy Don Eckhardt during the time the parties were married, including the following as it is related to U.S. Navy retirement pay:

The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. 1408, as follows:

a. Cecilia Ann Eckhardt is awarded one half (½) of Troy Don Eckhardt's military retirement pay accumulated with the U.S. Navy from the time of the marriage on February 17, 1983 until December 10, 1993.

. . .

g. Troy Don Eckhardt is on active duty with the U.S. Navy at the time this case is tried.

h. The award of retirement pay made to Cecilia Ann Eckhardt in this decree is made in compliance with the Uniform Services Former Spouses' Protection Act.

. . .

IT IS FURTHER ORDERED AND DECREED that the Secretary of the U.S. Navy or his designated agent shall pay to Cecilia Ann Wright directly, each month, Cecilia Ann Wright's interest awarded in this decree . . . on a monthly basis if, as, and when that retirement pay is due to be paid, such payments to begin when Troy Don Eckhardt's name is officially added to the Navy retirement list.

The Defense Finance and Accounting Service subsequently notified Wright that it would be unable to make payments to her pursuant to this decree because the decree did not include a formula for calculating Wright's percentage of Eckhardt's benefits. Consequently, Wright filed a motion for clarification of the decree.

The court granted Wright's motion for clarification on August 20, 1998. The court found that the original division of property was not specific enough to effect a division of Eckhardt's military retirement pay, and to allow the Defense Finance and Accounting Service to make a determination of what portion of Eckhardt's retirement pay should be given to Wright. The clarifying order provides a formula for calculating Wright's portion of Eckhardt's retirement pay. This order specifically provides that it does not affect the language in the original divorce decree regarding when payments are to begin— "on a monthly basis if, as, and when that retirement pay is due to be paid, such payments to begin when Troy Don Eckhardt's name is officially added to the Navy retirement list."

On September 30, 1997, Eckhardt left active duty status and became a member of the Fleet Reserve, where he was subject to recall by the Navy for a period of ten years. As a member of the Fleet Reserve, Eckhardt received retainer pay in an amount equal to his future retirement pay. The Defense Finance and Accounting Service determined that Wright was entitled to receive one-half of Eckhardt's retainer pay as part of Eckhardt's retirement pay, and began making payments to Wright despite the fact that Eckhardt's name had not yet been added to the "official" Navy retirement list.

Eckhardt subsequently filed a motion for clarification of the divorce decree contesting the payments to Wright, and arguing that Wright would not be entitled to receive her share of his retirement benefits until October 1, 2007, when his name would be added to the "official" Navy retirement list.

After an evidentiary hearing, the trial court entered a second clarification order on June 3, 1999. This order provides that the date that Troy Don Eckhardt's name will be officially added to the Navy retirement list is October 1, 2007. The order further provides that Wright had received payments to which she was not entitled, thus the order postpones the date on

which her benefits were to begin in order to compensate for monies previously received.

Wright attacks this clarification order in three issues. Wright first contends that the trial court erred in finding that the divorce decree was not specific enough to be enforceable by contempt. In her second issue, Wright argues that the trial court erred as a matter of law by entering an order that substantively modified provisions for the division of community property. In her final issue, Wright argues that the trial court did not have jurisdiction to enter the clarifying order, and that the order was barred by res judicata.

*Applicable Law*

A trial court lacks the authority to change the property division in a final divorce decree. *McGehee v. Epley*, 661 S.W.2d 924, 926 (Tex.1983). A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce. Tex. Fam.Code Ann. § 9.007(a) (Vernon 1998). An order that alters the substantive division of property in a final divorce decree is "beyond the power of the divorce court and is unenforceable." Tex. Fam.Code Ann. § 9.007(b). However, the Texas Family Code provides at least two circumstances in which the trial court may issue orders clarifying the decree.

Under section 9.006 of the Texas Family Code, the court may render "further orders to enforce the division of property made in the decree of divorce . . . to assist in the implementation of or to clarify the prior order." Tex. Fam.Code Ann. § 9.006(a) (Vernon 1998). The court may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed. *Id.* at § 9.006(b). The trial court may also clarify the decree on a finding by the court that the original form of the division of property is not specific enough to be enforceable

by contempt. Tex. Fam.Code Ann. § 9.008(b) (Vernon 1998).

A proper clarification order is consistent with the prior judgment and "merely enforces by appropriate order the controlling settlement agreement." *Young v. Young*, 810 S.W.2d 850, 851 (Tex.App.—Dallas 1991, writ denied). If the decree is ambiguous, the trial court may make clarifications, but it lacks the authority to change the property division. *McGehee*, 661 S.W.2d at 926.

Whether the decree is ambiguous and in need of clarification is a question of law that we review de novo. *Radx Corp. v. Demy*, 658 S.W.2d 298, 301 (Tex.App.—Houston [1st Dist.] 1983, no writ); *see Nat'l Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995)(whether a contract is ambiguous is a question of law for the court to decide). We determine the legal force and meaning of a marital property settlement agreement as we would any contract. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984). The determination of whether a contract is ambiguous is made by looking at the contract as a whole in light of the circumstances present when the parties entered the agreement. *Nat'l Union*, 907 S.W.2d at 520. If the written agreement is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Id.; Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

*Analysis*

In her first issue, Wright alleges that the trial court erred by finding that the divorce decree's division of property was not specific enough to be enforceable by contempt. We disagree with Wright that the trial court made such an implied finding, and we do not agree that such a finding is required under section 9.006 of the Texas Family Code. *Compare* Tex. Fam.Code Ann. § 9.006 (court may enter

enforcement or clarification orders regarding property division) *with* Tex. Fam.Code § 9.008 (court may enter clarification order on finding that the original division of property is not specific enough to be enforceable by contempt). We overrule Wright's first issue.

■ In Wright's second issue, she argues that the trial court erred by entering an order that modified the substantive division of property in the original decree. We agree. After reviewing the record and applicable law, we conclude that Wright was entitled to begin receiving her portion of Eckhardt's retirement benefits when he left active duty status.

The language of the original divorce decree encompasses retainer pay by broadly awarding Wright one half of "all IRAs, employment retirement benefits, pension plans, and the like," including Eckhardt's "military retirement pay."

The record shows that the Department of Finance and Accounting Service made the determination that retainer pay was part of Eckhardt's retirement pay, and thus began making payments to Wright. Ronald Lee Gates, Lieutenant Commander of the United States Navy, testified that when an individual goes on Fleet Reserve, they are no longer on active duty, and are not "technically" retired, but that the distinction was a matter of semantics. Gates testified that "For all but perhaps specialists, the term retirement and fleet reserve is synonymous," and that "96 percent of the United States Navy would classify transferring to the fleet reserve as being retired." Gates confirmed that the amount of retainer pay and the amount of retirement pay is the same.

The original divorce decree expressly stated that the award to Wright was made in "accordance" and "compliance" with the Uniform Services Former Spouses' Protection Act, which specifically provides that "retired pay" includes retainer pay. *See* 10 U.S .C. § 1408(a)(7) (1988); *Sutherland v. Cobern*, 843 S.W.2d 127, 130 n. 5 (Tex.

App.—Texarkana 1992, writ denied)(retainer pay is included in the term retired pay). At the hearing on the motion for clarification, Eckhardt stipulated that retainer pay and retirement pay are identical under federal law.

Given the foregoing, we conclude that Wright was entitled to one-half of Eckhardt's retainer pay under the original divorce decree. Nevertheless, Eckhardt argues that, under the original divorce decree and initial clarifying order, Wright is not entitled to receive any of his military retirement benefits until his name has been added to the official Navy retirement list. In this regard, Eckhardt specifically testified that his name had not yet been added to the official Navy retirement list.

■ We disagree with Eckhardt's interpretation of the divorce decree. The phrase providing for the inception of payments when Eckhardt's name is added to the Navy retirement list is in apparent conflict with other provisions in the decree governing payments to Wright and provisions governing the substantive division of property. Where provisions in the decree appear to conflict, they should be harmonized if possible to reflect the intentions of the parties. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983). Furthermore, no single provision taken alone will be given controlling effect; rather, all provisions must be considered with reference to the whole instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

Eckhardt's referenced language must be construed with other language in the decree regarding when Wright's benefits were to be paid. *Ogden*, 662 S.W.2d at 332. The phrase in its entirety provides that payments are to be made "on a monthly basis, if, as, and when that retirement pay is due to be paid, such payments to begin when Troy Don Eckhardt's name is officially added to the Navy retirement list." The use of the phrase "if, as, and when" contemplates that benefits are to be owed to Wright when Eckhardt receives

benefits. *See Baxter v. Ruddle*, 794 S.W.2d 761, 763 (Tex.1990); *Hurley v. Hurley*, 960 S.W.2d 287, 289 (Tex.App.—Houston [1st Dist.] 1997, no writ). Moreover, the decree provides that:

> IT IS FURTHER ORDERED AND DECREED that ... Troy Don Eckhardt is ORDERED to pay to Cecilia Ann Wright Cecilia Ann Wright's interest in that pay *each month as it is received by Troy Don Eckhardt and in no event later than the 5th day of each month in which Troy Don Eckhardt receives that retirement pay*, beginning the 5th day of the first month in which the retirement pay is paid ... This paragraph applies only to the extent that the Secretary of the U.S. Navy or his designee fails to pay directly to Cecilia Ann Wright the monthly entitlement as awarded in this decree, or any portion of that monthly entitlement.

(emphasis added). This language further indicates that benefits are owed to Wright as they are received by Eckhardt.

Although Gates stated that he would interpret the phrase "when Troy Don Eckhardt's name is added to the [N]avy retirement list" to mean that Wright's entitlement to his benefits would not inure until 2007, we note that Gates was examining this phrase in isolation, and that Gates further stated that he would defer to the Defense Finance and Accounting Service's determination regarding Wright's entitlement to Eckhardt's retirement benefits.

Construing the decree in its entirety, we conclude that Wright is entitled to receive her share of Eckhardt's retainer pay as it is received by Eckhardt. The phrase "when Troy Don Eckhardt's name is officially added to the Navy retirement list" is not rendered meaningless by this interpretation, but rather applies specifically to those retirement benefits that Eckhardt will receive when his name is added to the retirement list. To construe the decree as Eckhardt suggests would give a single provision of the decree controlling effect. *See Coker*, 650 S.W.2d at 393.

▮ We conclude that the original divorce decree, while unambiguous on its face, contained a latent ambiguity because it provided for inconsistent inception dates for Wright's payments. The decree awarded Wright one-half of Eckhardt's retainer pay, yet failed to provide for the payment of retainer pay, which would necessarily accrue before Eckhardt's name was added to the official Navy retirement list. *Nat'l Union*, 907 S.W.2d at 520; *see also Friendswood Dev. Co. v. McDade*, 926 S.W.2d 280 (Tex.1996). The trial court was thus authorized to enter a clarification order under section 9.006 of the Texas Family Code. *See* Tex. Fam.Code § 9.006(a).

▮ However, we agree with Wright that the clarifying order entered on June 3, 1999, impermissibly changes the substantive division of property made in the divorce decree. Wright was originally awarded one-half of Eckhardt's military retirement pay. The clarification order divests Wright of her share of Eckhardt's retainer pay, which is part of Eckhardt's retirement pay. The order is thus beyond the power of the trial court, and is unenforceable. *See* Tex. Fam.Code Ann. § 9.07(b).

We sustain Wright's second issue. Because we have sustained this issue, we need not address her third issue. *See* Tex.R.App. P. 47.1. We reverse the trial court's order of June 3, 1999 which attempted to clarify the original divorce decree, and render judgment that all relief sought by Eckhardt in his motion to clarify is hereby denied.

The judgment is reversed and rendered.