COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-436-CV

 

 

BRUCE RICHARDS MCKEE                                                    APPELLANT

 

                                                   V.

 

EUDORA PAYNE MCKEE                                                          APPELLEE

 

                                              ------------

 

           FROM
THE 231ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Introduction








In this postdivorce
enforcement proceeding, appellant Bruce Richards McKee appeals the trial court=s order in favor of appellee Eudora Payne McKee in the amount of
$150,000.00 plus interest and attorney=s fees.  In four issues,
he argues (1) that the final order does not conform to appellee=s pleadings, (2) that there is no evidence that he violated the final
divorce decree by failing to sell the parties= residence, (3) that the final order violates Texas Family Code
sections 9.006 and 9.007 by modifying the substantive division of the marital
estate, and (4) that the final order violates Texas Family Code section
9.010.  We affirm.

Background Facts

On July 1, 2003, the trial
court signed the parties= divorce
decree in accordance with their mediation agreement.  In the decree, the trial court awarded
appellee a lump sum of $50,000.00, payable within 120 days of the date of the
decree.  In accordance with the decree,
appellee moved out of the parties= residence within thirty days of receiving the $50,000.00, in January
of 2004.  In addition, the trial court
ordered that the couple=s residence
be sold and that appellee was to receive the first $150,000.00 from the net
proceeds of the sale.  If the proceeds
from the sale of the residence fell short of $150,000.00, appellant was ordered
to make up the difference, which guaranteed appellee this additional
$150,000.00.  Any net proceeds that
exceeded $150,000.00 were awarded to appellant. 

On June 18, 2003, after
mediation but before the decree had been signed, the parties put the house on
the market.  The listing expired on April
28, 2005, over a year after appellee had vacated the house, without it being
sold. 








On July 13, 2005, appellee
filed a Petition for Enforcement in which she alleged that appellant was
required to sell the property in accordance with the decree, that appellant had
removed the property from the market, and that appellant had made no effort to
sell the property as required by the decree. 
In addition, appellee alleged that she had not received the $150,000.00
that she had been awarded in the decree. 
Appellee asked the trial court to appoint a receiver to sell the
property and for interest on the $150,000.00 at the rate of ten percent per
annum from July 1, 2003, the date the judge signed the decree. Appellant filed
a counterpetition seeking to recover personal property items in appellee=s possession. 








On November 10, 2006, the
trial court, after an evidentiary hearing, entered a final order awarding
appellee $150,000.00, plus interest at the rate of six percent per annum from
May 1, 2005.  The order stated that if
the $150,000.00 was not paid by November 15, 2006, the trial court would
appoint a receiver to sell the property. 
The court also awarded attorney=s fees to appellee. 
Additionally, the court found that the parties had stipulated that
certain items of personal property in appellee=s possession would be awarded to appellant except for a diamond that
had been set in appellee=s engagement
ring, which would remain appellee=s separate property.  Appellant
challenges only the parts of the order requiring him to pay appellee
$150,000.00 and appointing a receiver to sell the property if he did not pay
the $150,000.00.

Trial by Consent

In his first issue, appellant
argues that the trial court erred by awarding a money judgment to appellee even
though she did not plead for a money judgment. 
Appellee responded that the matter was tried by consent. 

Rule 301 of the Texas Rules
of Civil Procedure provides that the judgment of a court must be supported by
the pleadings.  Tex. R. Civ. P. 301. 
The purpose of pleadings is to give an adversary notice of claims and
defenses, as well as notice of the relief sought.  Perez v. Briercroft Serv. Corp., 809
S.W.2d 216, 218 (Tex. 1991); Herrington v. Sandcastle Condominium Ass=n, 222 S.W.3d 99, 102 (Tex. App.CHouston [14th Dist.] 2006, no pet.). But when an issue not raised by
the pleadings is tried by the express or implied consent of the parties, it is
treated in all respects as if it had been raised in the pleadings.  Tex.
R. Civ. P. 67; see Roark v. Stallworth Oil & Gas, Inc., 813
S.W.2d 492, 495 (Tex. 1991).  The party
who allows an issue to be tried by consent and who fails to object to the lack
of a pleading raising that issue before submission of the case cannot later
object to the pleading deficiency for the first time on appeal.  Tex. R.
Civ. P. 90; Roark, 813 S.W.2d at 495.  








Trial by consent is intended
to cover the exceptional case in which it clearly appears from the record as a
whole that the parties tried the unpleaded issue.  RE/MAX of Tex., Inc. v. Katar Corp.,
961 S.W.2d 324, 328 (Tex. App.CHouston [1st Dist.] 1997), pet. denied, 989 S.W.2d 363 (Tex.
1999); Stephanz v. Laird, 846 S.W.2d 895, 901 (Tex. App.CHouston [1st Dist.] 1993, writ denied).  It is not intended to establish a general
rule of practice and should be applied with care.  RE/MAX of Tex., 961 S.W.2d at 328; Stephanz,
846 S.W.2d at 901.  To determine whether
an issue was tried by consent, the court must examine the record, not for
evidence of the issue, but rather for evidence of trial of the issue.  Beck v. Walker, 154 S.W.3d 895, 901 n.3
(Tex. App.CDallas 2005,
no pet.); RE/MAX of Tex., 961 S.W.2d at 328; Stephanz, 846 S.W.2d at 901.

Here, appellee=s petition for
enforcement asked the trial court to appoint a receiver to sell the property
and award her $150,000.00 from the net proceeds, plus interest from July 1,
2003, the date of the decree, to the date of closing of the sale of the
property.  The record indicates that the
trial court verified at the beginning of the hearing that the payment of
$150,000.00 was at issue.  The trial
judge stated the following:








[The Court]:  And it=s my understanding the issues have                         to do with the $150,000
that was to have                            been
paid to Ms. McKee from the sale of                           the
residence . . . .

 

[Mr. Hoover]:          That=s correct, Your Honor. And as well
he                         has a claim for
an offset for the condition                             of
the residence against any monies owed                         her.

 

Appellee later testified that she was asking the judge
to award her interest on the $150,000.00. 
Specifically, she testified as follows:

[Mr. Stephenson]:   Are you asking the Judge to award                                    you interest
at the legal rate?

 

[Ms. McKee]:                   Please.

 

[Mr. Stephenson]:   On $150,000? 

 

Furthermore, appellant testified
repeatedly that he wanted to pay appellee $150,000.00 and not sell the
house.  For example, appellant stated
that he placed $150,000.00 in an escrow account over a year ago and that it was
available to her on the same day that he put it in escrow.  He also testified that appellee could have
the money immediately.  In addition,
appellant said that he had decided not to sell the house and wanted to buy out
appellee=s interest.
Appellant testified as follows:

[Mr. McKee]:                   I was going to buy her interest of the                                 house.

 

[Mr. Stephenson]:   Okay. 
So what would you have to do                                 to
buy her interest?

 








[Mr. McKee]:                   Well, I had already given her 50.  My                                assumption
would be I=d give her another                                       150.

 

[Mr. Stephenson]:   Okay. 
And what efforts did you make to                                      do
that?

 

[Mr. McKee]:                   We talked with Mr. Keller and that was the                                   last we heard.

 

[Mr. Stephenson]:   The question is: What efforts did you make                                 to do that?

 

[Mr. McKee]:                   I don=t understand what you mean by                                 efforts.

 

[Mr. Stephenson]:   Well, did you send her any money?

 

[Mr. McKee]:                   I don=t know how to get ahold of her, sir.                                      Through
Mr. King I can find her.  Through                                   you I can find
her.  I don=t know where she                             lives.  Excuse me. 
I=m not going to go                               leave a bundle of
hundreds on the corner.                                     

Later appellant continued and testified as
follows:

[Mr.Stephenson]:    Is it your position that you don=t owe any                                     money to Eudora until the house
is sold?

 

[Mr. McKee]:                   No.

 

[Mr. Stephenson]:   What is your position?

 

[Mr. McKee]:                   My position was is [sic] I made it through                                     Mr. Hoover.
I said, AWe need to get this                                       wrapped
up.  I=m going to take the house. 
                              I=m going to pay her her$150,000.@ 

 








The record clearly indicates that appellant interjected the
possibility of a money judgment into the proceeding and specifically asked the
trial court to award appellee a money judgment. 
He repeatedly stated that the money was available and that he was ready
and willing to give her the money. 
Accordingly, we hold that the issue was tried by consent, and we
overrule appellant=s first issue.

Sale of Property

In appellant=s three remaining issues, he complains that the trial court was not
authorized to award appellee a money judgment of $150,000.00, plus interest
from May 1, 2005, and attorney=s fees because (1) there is no evidence that he violated the decree by
failing to sell, or obstructing the sale of, the house; (2) such an award
modifies the substantive division of the marital estate in violation of
sections 9.006 and 9.007 of the family code; and (3) section 9.010 of the
family code does not provide for such a judgment. 








A trial court lacks the
authority to change the property division in a final divorce decree at a later
date.  Tex.
Fam. Code Ann. ' 9.007(a)
(Vernon 2006); Wright v. Eckhardt, 32 S.W.3d 891, 894 (Tex. App.CCorpus Christi 2000, no pet.). 
An order that alters the substantive division of property in a final
divorce decree is Abeyond the
power of the divorce court and is unenforceable.@  Tex. Fam. Code Ann. ' 9.007(b); Wright, 32 S.W.3d at 894.  However, under section 9.006 of the code, the
court may render Afurther
orders to enforce the division of property made in the decree of divorce . . .
to assist in the implementation of or to clarify the prior order.@  Tex. Fam. Code Ann.  ' 9.006(a); Wright, 32 S.W.3d at 894.  The court may specify more precisely the
manner of effecting the property division previously made if the substantive
division of property is not altered or changed. 
Tex. Fam. Code Ann. ' 9.006(b); Wright, 32 S.W.3d at 894. 

The gravamen of appellant=s complaint is the trial court=s award of  $150,000.00 to
appellee, regardless of when, or if, the house was later sold by appellant.[2]  But appellant not only raised the possibility
of such an award himself, he specifically told the trial court that was what he
wanted.  A party cannot complain on
appeal that the trial court took a specific action that the complaining party
requested, a doctrine commonly referred to as Athe invited error@ doctrine.  Tittizer v. Union
Gas Corp., 171 S.W.3d 857, 862 (Tex. 2005); Neasbitt v. Warren, 22
S.W.3d 107, 112 (Tex. App.CFort Worth 2000, no pet.). 
Thus, we hold that appellant cannot now complain about the trial court=s awarding the $150,000.00 to appellee.








Moreover, the trial court was
justified in determining that appellant violated the decree.  The record shows that the parties received
two offers to buy the house.  According
to the parties= realtor,
Charles Yost, in March 2004, the parties received an offer of $280,000.00,
which was very low.  Yost testified that
the parties asked the potential buyer to submit another bid, but the potential
buyer did not.  Yost stated that the
second offer of $370,000.00 occurred in April 2005, three days before the
listing expired.  Although Yost said the
offer was fair, appellant decided not to sell the house at that time and
appellant let the listing expire without following up on the offer.  The record also contains other evidence that
appellant had no intention of selling the house.  For example, at the hearing, appellant
testified that a couple of weeks before the listing expired, he decided that he
was not going to sell the house. 
Additionally, appellant loaned the house to his son and testified that
he had decided to buy the house himself. 
Furthermore, appellant placed $150,000.00 in an escrow account equal to
the amount that he was ordered to give appellee from the net proceeds of the
sale of the house.  The trial court=s order awarding appellee $150,000.00 implements appellant=s own testimony, which was that he would pay appellee $150,000.00 and
keep the house. 








Implicit in the decree was
the parties= agreement
that the house would be sold.  Appellant,
however, testified that he had decided not to sell the house.  By doing so, he breached the parties= mediated settlement that had been incorporated into the decree.  Regardless of whether the decree was specific
enough to be enforceable by contempt, the parties= agreement to sell the house was specifically set forth in the
decree.  The trial court awarded appellee
interest from May 1, 2005, two days after the date the listing of the residence
expired on April 28, 2005, as a result of appellant=s unilateral decision not to sell the house as ordered by the
decree.  The trial court was free to
reject appellant=s
explanation that he did not know how to contact appellee to pay her the
$150,000.00 and to conclude that appellant caused the filing of the petition
for enforcement.  See City of Keller
v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005). Thus, the trial court was also
justified in awarding appellee interest on the $150,000.00 from the date the
listing agreement expired.[3]








As to appellant=s complaint about the trial court=s award of attorney=s fees, the trial court may award reasonable attorney fees in a
proceeding to enforce or clarify a divorce decree.  Tex.
Fam. Code Ann. ' 9.014
(Vernon 2006); Wilson v. Wilson, 44 S.W.3d 597, 599-600 (Tex. App.CFort Worth 2001, no pet.)  Here,
the trial court=s award of
attorney=s fees to appellee was within its discretion under section 9.014, and
the parties stipulated at trial to the reasonable and necessary amount of
attorney=s fees should the trial court award them.  Id. 
Thus, we conclude that the trial court did not err by awarding attorney=s fees to appellee.

Additionally, appellant seems
to argue that appellee would still retain an ownership interest in the house in
addition to the $150,000.00 money judgment because the trial court did not
order her to execute a deed to appellant of her community property interest in
the house; appellant claims that the trial court=s order was therefore an invalid partition.  However, it is clear that, in accordance with
the spirit of the parties= mediation
agreement incorporated into the decree, the trial court wanted appellee to
receive $150,000.00 as her share of the house regardless of whether the house
was sold to a third party or whether appellant retained ownership of the house.  Moreover, the decree specifically requires
appellee to execute A[a]ll other
documents required to effectuate the terms and conditions and division of the
estate set forth in this decree.@  Thus, there was no need for
the trial court to include deed language in the order because the decree
already provides for that.  McLendon
v. McLendon,  847 S.W.2d 601, 612-13
(Tex. App.CDallas 1992,
writ denied).  We overrule appellant=s remaining three issues.

 

 








Conclusion

Having overruled appellant=s four issues, we affirm the
trial court=s
judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL
B: LIVINGSTON, WALKER, and MCCOY, JJ.

 

DELIVERED:
January 10, 2008











[1]See Tex. R. App. P. 47.4.





[2]The
trial court=s
order did not require appellant to sell the house if he paid appellee the
$150,000.00; it only required the house to be sold if appellant refused to pay
appellee the $150,000.00.





[3]Appellant
testified that a couple of weeks before the listing expired he decided to let
his son use the house and let the listing run out.