NO. 07-06-0222-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 31, 2008

_____

IN THE MATTER OF THE MARRIAGE OF

NANCY J. KLEIN AND W. MIKE KLEIN
_____

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2001-514,023; HONORABLE DRUE FARMER, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

W.M. "Mike" Klein and N.J. "Nancy" Klein each appeal from the trial court's judgment enforcing their divorce decree.[1] We will affirm in part, reverse and remand in part, and reverse and render in part.

_____

[1] For clarity and convenience, we will refer to the parties by their first names.

## Background

The parties separated in May 2001, and Nancy filed a petition for divorce the same month. Temporary orders were entered in July 2001, and the final decree of divorce, incorporating their agreement, was signed in September 2003.

In 2004 Nancy filed a motion for enforcement. Her amended motion for enforcement was heard by the trial court, eventually resulting in the judgment made the subject of this appeal. The court made findings of fact and conclusions of law.

In her amended motion for enforcement, Nancy contended that Mike had violated their agreed divorce decree in three respects, by (1) failing to pay some yard care expenses incurred in June 2003 at the residence awarded to Nancy; (2) failing to honor the decree's provision making him solely liable for taxes on income earned during the marriage, and (3) failing to transfer to Nancy security deposits paid by tenants of a rental property awarded to her. The trial court agreed with Nancy as to the yard care expenses and the income taxes, agreed with Mike as to the security deposits, rendered judgment accordingly, and awarded Nancy attorney's fees.

Mike presents twelve issues on appeal. His first three issues challenge the trial court's rulings on the yard care and income tax issues, and its award of attorney's fees to Nancy. His remaining issues challenge specific findings of fact. In her appeal, Nancy presents a single issue contesting the court's ruling on the security deposits.

Applicable Law

As noted, the parties entered into an agreed final decree of divorce containing provisions and obligations about which they later disagreed. Contract principles control construction of an agreed property division incorporated into a divorce decree. *See Appleton v. Appleton,* 76 S.W.3d 78, 84 (Tex.App.–Houston [14th Dist.] 2002, no pet.), *citing McGoodwin v. McGoodwin,* 671 S.W.2d 880 (Tex. 1984). *See also Ex Parte Jones,* 358 S.W.2d 370, 375 (1962). To the extent we are required to engage in contract construction here, we review the trial court's actions under a *de novo* standard. *Wright v. Eckhardt,* 32 S.W.3d 891, 894 (Tex.App.–Corpus Christi 2000, no pet.); *Able v. Able,* 725 S.W.2d 778, 779 (Tex.App.–Houston [14th Dist.] 1987, writ ref'd n.r.e.).

When construing a written contract, the court's primary concern is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *Appleton,* 76 S.W.3d at 84. To ascertain the true intentions of the parties to the contract, "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all of the provisions* of the contract so that none will be rendered meaningless." *Id., citing Buys v. Buys,* 924 S.W.2d 369, 372 (Tex. 1996) (emphasis in original). *See also Questa Energy Corp. v. Vantage Point Energy, Inc.,* 887 S.W.2d 217, 221 (Tex.App.–Amarillo 1994, writ denied). When a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and we construe it as a matter of law.[2]

---

[2] Neither party here contends the decree is ambiguous.

3

*Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex. 2000); *Buys,* 924 S.W.2d at 372.

Analysis

*Issue One - Yard Care Expenses*

The temporary orders gave Nancy possession of their residence but required Mike to pay certain household expenses. That list included homeowners insurance, utilities and "[a]ll necessary and normal repairs to the residence . . . and normal weekly lawn maintenance and maid service at the residence of twelve hours per week." The final decree provides that Mike is responsible for "[a]ll unpaid debts of the parties incurred during the marriage, including those known debts incurred prior to the date of separation of the Parties, the same being May 27, 2001, Save and Except the debts specifically agreed to be paid by wife as set forth herein . . . ."[3] It provides that Nancy is responsible for "[a]ll unpaid debts, charges, liabilities and other obligations incurred solely by [her] which were not the obligation of the husband under Temporary Orders and which have been incurred since May 27, 2001."

The dispute is over two bills, totaling $2,239.91, from yard care companies for bedding plants planted in the front and back yards of the residence in June 2003. The record contains evidence that the parties commonly had similar seasonal flowers planted. During his testimony at the hearing, Mike acknowledged he paid for similar plantings in

---

[3] Capitalization as in original.

previous years. Nancy testified they had a "standing order" with the yard care companies for such plantings twice a year, and that neither she nor Mike "ordered" the plantings in question.[4]

We agree with Nancy that the issue is resolved by the language of the final decree. Under its terms, Nancy is responsible for obligations "incurred solely by [her.]" Although Nancy had possession of the residence at the time, we think the trial court could have determined that the debts incurred for the June 2003 plantings were not incurred solely by her under the language of the final decree. Under those circumstances, the decree made Mike responsible for the debt. We overrule Mike's first issue.

*Issue Two - Tax Liability*

Among the final decree's provisions under the heading "federal income tax" are the following:

> IT IS ORDERED AND DECREED that W. Mike Klein shall be solely responsible for all federal income tax liabilities, whether personal or corporate, of the parties incurred on income through the date of divorce and shall timely pay any deficiencies, assessments, penalties, or interest due thereon and shall indemnify and hold Nancy J. Klein and her property harmless therefrom.

> IT IS ORDERED AND DECREED that, for the calendar year 2003, each party shall file an individual income tax return in accordance with the Internal Revenue Code.

---

[4] Under cross-examination, Nancy testified the companies contacted her to "schedule" the plantings, and she acknowledged she told them to do the work, "per the normal maintenance."

5

IT IS ORDERED AND DECREED that each party shall use as a credit against his or her tax liability for 2003 all estimated tax payments and wage/salary withholding made by him or her, 50 percent of the parties' prior year overpayments and credits, and 50 percent of the estimated payments made in the names of both parties.

As required by the temporary orders, Mike made estimated tax payments in both parties' names in April, June and September 2003. They totaled $35,625. In accordance with the final decree, Nancy reported half the estimated payments on her 2003 return, together with half of the parties' overpayment in 2002, a total of $18,790. Her total tax for 2003 was $12,597, giving her an overpayment for 2003 of $6,193.[5]

Nancy contends that the decree's provisions that Mike be "solely responsible for all federal income tax liabilities . . . of the parties incurred on income through the date of divorce" and "hold Nancy and her property harmless therefrom" mean that Mike was to reimburse her for the amount of tax on her share of the parties' income through the date of divorce, without regard to the estimated payments. Thus, she contended, Mike was in violation of the decree's tax provisions even though the required estimated payments paid the taxes on her share of the parties' pre-divorce income, leaving her with no liability for such taxes. The trial court found that, under the decree's provisions, Nancy "was to receive as part of the property division one-half of all pre-divorce payments and refunds" and that Mike violated them by "failing to be solely responsible for all federal income tax liabilities," and gave Nancy judgment for $14,597, the amount her accountant calculated as the tax that would have been owed on Nancy's half of the pre-divorce income.

_____

[5] Her return indicates Nancy chose to apply the $6,193 overpayment to her 2004 tax.

We disagree with the trial court's construction of the decree. In our judgment, the requirement that Mike "shall be solely responsible for all federal income tax liabilities" cannot reasonably be read as the equivalent of a provision that Nancy "receive as part of the property division one-half of all pre-divorce payments and refunds." As Mike points out, the estimated tax payments are not addressed in the decree's provisions for division of the marital estate. The only reference in the agreed decree to the estimated payments and prior years' overpayment is the provision, quoted above, that each party use half of the estimated payments and overpayments as a credit against the party's 2003 income tax liability.

Mike contends the only reasonable reading of the decree is that he would be responsible for the tax liability, if any, due after the estimated payments were applied as ordered. Nancy responds that it would have been easy enough for the parties to have said so if that had been their agreement. Our task is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *See, e.g., Appleton,* 76 S.W.3d at 84. Especially in view of the temporary order's requirement that Mike make estimated payments, and considering the decree's provisions for income taxes as a whole, we agree with Mike that the "liabilities" for which he agreed to be "solely responsible" must mean any liability after the estimated payments are taken into account. Because no tax liability remained after the estimated payments, he did not violate the decree's terms. We sustain Mike's issue two.

7

As noted, Nancy also appeals from the trial court's ruling. In one issue, she challenges the court's failure to find that Mike violated the final decree by failing to deliver to her deposits paid by tenants in a commercial property awarded to her. The parties refer to the property as Yorktown. Evidence showed Mike acknowledges he has not paid the deposited amounts to Nancy.

The final decree contains this language:

IT IS ORDERED AND DECREED that the wife, NANCY J. KLEIN, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1. The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

. . .

(b) 5020 50th Street, Lubbock, Lubbock County, Texas (Yorktown)

Kuykendall Hts N 194.5' of E 371.84' and W 28' of E 213' of S 263' of L 534

This property includes all rents due and payable on rental agreements from tenants occupying the Yorktown locations at 5020 50th Street, Lubbock, Texas commencing within the month of September 2003 and thereafter, together with all contract rights, inclusive of tenant deposits, if any, held in trust or escrow. Wife shall assume the obligations of Landlord under any such Yorktown tenant agreements and hold and indemnify husband as to the same.

In their arguments, the parties focus on the decree's language describing the Yorktown property as including "all contract rights, inclusive of tenant deposits, if any, held in trust or escrow." It is undisputed none of the Yorktown security deposits were held in formal trust or escrow accounts. In fact, the parties did not segregate the security deposits from their other funds at all, but deposited them into their joint account. Mike contends this fact is dispositive of the issue, arguing that the "held in trust or escrow" phrase limits the tenant deposits included as contract rights to those held in trust or escrow arrangements.[6] We disagree.

At the same time the parties executed the agreed decree, they executed an assignment of the Yorktown leases.[7] The assignment makes reference to the obligation under the leases to repay tenants' security deposits. To determine the parties' intent with regard to the security deposits, we will construe the documents together. *See In re Waggoner Estate,* 163 S.W.3d 161, 166 (Tex.App.–Amarillo 2005, no pet.), *citing Jones v. Kelley,* 614 S.W.2d 95, 98 (Tex. 1981) (separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together). *See also Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex. 2000).

---

[6] Mike also argues a security deposit, once made, is not a contract right of the landlord but a contingent liability, measured by the amount the landlord will be obligated to return on termination of the lease. In our context, the argument proves too much. If a deposit is viewed as a liability, it is a liability whether or not it is held in escrow. But the decree clearly treats deposits held in escrow as contract rights.

[7] The assignment also makes reference to the deed, of the same date, by which Mike conveyed the Yorktown property to Nancy.

The leases with Yorktown tenants set forth the landlord's authority to apply the security deposit to a tenant's breaches of the lease, and the obligation to return the deposit if the tenant has performed the lease obligations. In addition, a landlord's obligations to account for and refund security deposits in commercial tenancies are governed by statute. Tex. Prop. Code Ann. § 93.004, *et seq*. (Vernon 2007). Subject to other terms of the statute, the landlord may deduct from the deposit damages and charges for which the tenant is liable under the lease. Tex. Prop. Code Ann. § 93.006(a). A new owner of the property becomes liable for the return of the deposit. Tex. Prop. Code Ann. § 93.007(a).

Neither the Yorktown leases nor the Texas statute requires security deposits to be held in escrow or trust accounts. Neither the provisions of the leases nor those of the lease assignment distinguish between deposits held in escrow or trust and those held otherwise. Under the terms of the documents before us, we are unable to see that such a distinction has any bearing on the landlord's rights with respect to the deposits, or on the landlord's obligations to account for and return them. Our Supreme Court has noted that a court should construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served. *Frost Nat'l Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005), *quoting Reilly v. Rangers Mgmt., Inc.* 727 S.W.2d 527, 530 (Tex. 1987). In this instance, we think the parties used the phrase "tenant deposits, if any, held in trust or escrow" not to distinguish some deposits from others but simply to refer to deposits held subject to the obligations of the law and the leases. Such deposits, under the agreed final decree, are "contract rights," required to be transferred along with the Yorktown property. We sustain Nancy's issue.

10

*Attorney's Fees*

In his third point of error, Mike challenges the award of attorney's fees to Nancy in the amount of $5,000. His argument is that she was the prevailing party only because the trial court erroneously granted part of the relief she requested in her motion for enforcement. The Family Code expressly provides for an award of attorney's fees in proceedings to enforce the decree. Tex. Fam. Code Ann. § 9.014 (Vernon 2006); *In re Marriage of Malacara*, 223 S.W.3d 600, 603 (Tex.App.–Amarillo 2007, no pet.). We review the trial court's award of attorney's fees for an abuse of discretion. *See Chavez v. Chavez,* 12 S.W.3d 563, 566 (Tex.App.–San Antonio 1999, no pet.) (review of award of attorney's fees in an enforcement proceeding is under an abuse of discretion standard); *Schneider v. Schneider,* 5 S.W.3d 925, 930 (Tex.App.–Austin 1999, no pet.) (same). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex. 1997). We see no abuse of discretion in the trial court's award, and overrule Mike's third issue.

*Findings of Fact*

Our dispositions of Mike's first three issues make it unnecessary that we consider the challenges to the findings of fact presented in his issues 4-12. Tex. R. App. P. 47.1.

Conclusion

We reverse the trial court's judgment in favor of Nancy with regard to the 2003 federal income tax payments, and render judgment that Nancy take nothing under her claim

11

under the federal income tax provisions of the final decree.[8] We reverse the trial court's judgment with regard to Nancy's award of the Yorktown security deposits[9] and, finding that the state of the record does not permit us to render judgment with respect to that claim, remand it to the trial court. In all other respects, we affirm the trial court's judgment.


James T. Campbell
Justice


Pirtle, J., dissenting.

---

[8] Referred to in the trial court's judgment as "Violation [of the decree] No. 3."

[9] Referred to in the trial court's judgment as "Violation [of the decree] No. 2."