

## NUMBER 13-17-00014-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

RITA ALEJANDRO,                                                    Appellant,

v.

EFRAIN ALEJANDRO,                                                  Appellee.

On appeal from the County Court at Law No. 1
of Hidalgo County, Texas.

# MEMORANDUM OPINION
### Before Justices Rodriguez, Contreras, and Benavides
### Memorandum Opinion by Justice Benavides

Appellant Rita Alejandro appeals the trial court's entry of the Third Amended

Qualified Domestic Relations Order (QDRO) on the sole ground that it does not accurately

reflect the terms of the Mediated Settlement Agreement (MSA).[1]  *See* TEX. FAM. CODE

---

[1] Appellee Efrain Alejandro did not file a brief to assist us in this appeal.

ANN. § 6.602(c) (West, Westlaw through 20171st C.S.).  We affirm.

## I.  Background[2]

Rita and Efrain Alejandro were divorced in June 2012 after reaching an MSA.  The MSA described the distribution of Efrain's retirement plan with the Texas Municipal Retirement System (TMRS) as follows:

> EFRAIN ALEJANDRO will keep the retirement through his employment. EFRAIN ALEJANDRO represents that the amount in his retirement is $100,000.00 as of today's date.  Upon verification, if EFRAIN ALEJANDRO's retirement exceeds $100,000.00 as of today's date, the excess amount will be divided equally between the parties.

The divorce decree divided Efrain's municipal retirement account between the parties as follows:

> All sums . . . together with all increases thereof, proceeds therefrom, and any other rights related to any [retirement plan benefits] existing by reason of the husband's past, present, or future employment.  EFRAIN ALEJANDRO further represents that the amount in his retirement through his employment is $100,000.00 as of January 11, 2012.  Upon verification if EFRAIN ALEJANDRO'S retirement exceeds the $100,000.00 as of January 12, 2012, the excess amount shall be divided equally between EFRAIN ALEJANDRO and RITA ALEJANDRO.

> A QDRO was signed by the trial court on July 10, 2013.

After TMRS rejected the first QDRO, the trial court signed an Amended QDRO on January 10, 2014.  The Amended QDRO described the division of Efrain's retirement as follows:

> As part of a just and right division of the estate of the parties, Alternate Payee [Rita] is hereby awarded a portion of any benefits payable with respect to Participant [Efrain] which Participant . . . may become entitled to receive from the Plan, by way of accumulated contributions or by way of an annuity that may become payable as a result of Participant's participation

---

[2] The facts recited in this section are taken from the orders and motions included in the Clerk's Record.

2

in the Plan, such portion to be determined by multiplying 50% by a fraction, the numerator of which is all accumulated contributions over the sum of $100,000.00 deposited to Participant's individual account with the Plan between October 31, 1981 and June 26, 2012, and the denominator of which is the total of all contributions heretofore made by Participant to Participant's individual account with the Plan (together with all accumulated interest thereon), and then multiplying that product by the benefit that would otherwise be payable to Participant . . . by the Plan.

A Second Amended QDRO was signed by the trial court on June 10, 2016. It modified the language to read as follows:

such portion to be determined by multiplying a fraction, the numerator of which is $66,015.48 of the accumulated contributions deposited to the Participant's individual account with the Plan earned by Participant during his marriage, together with interest thereon as allowed by the Plan after June 26, 2012, and the denominator of which is the total of all contributions heretofore made by Participant to Participant's individual account with the Plan (together with all accumulated interest thereon), by the benefit that would otherwise be payable.

Efrain moved to set aside the Second Amended QDRO on September 13, 2016, complaining that it permitted Rita to obtain payment of interest which had not been included in the MSA. The trial court held a hearing during which Efrain also raised his concern that the payments to Rita should not include municipal contributions. After the hearing, the trial court set aside the challenged language from the Second Amended QDRO by order dated October 6, 2016, and replaced it with the following:

such portion to be determined by multiplying a fraction, the numerator of which $66,015.48 of the accumulated contributions deposited to the Participant's individual account with the Plan, earned by Participant during this marriage, and the denominator of which is the total of all contributions heretofore or hereafter made by Participant to Participant's individual account with the Plan (together with all accumulated interest thereon), by the benefit that would otherwise be payable (excluding any portion based on municipality contributions).

3

The trial court signed a Third Amended QDRO on October 17, 2016 that incorporated the language from its order of October 6, 2016.   Rita timely requested findings of fact and conclusions of law and filed a combined motion for new trial and to vacate the Third Amended QDRO.   The trial court held a hearing in December 2016 after which it denied Rita's combined motion.   Rita appealed.

## II.     THE THIRD AMENDED QDRO

Rita contends that the trial court abused its discretion by signing the Third Amended QDRO because it modified the terms of the divorce decree and MSA.

## A.     Standard of Review

A trial court's decision to enforce a compliant MSA is reviewed for an abuse of discretion. *See In re Lee*, 411 S.W.3d 445, 459 (Tex. 2013) (orig. proceeding) (holding trial court abused its discretion when it refused to enter judgment on MSA); *see also Cojocar v. Cojocar*,No. 03-14-00422-CV, 2016 WL 3390893, at *2 (Tex. App.—Austin June 16, 2016, no pet.) (mem. op.) (reviewing trial court's decision not to set aside an MSA for abuse of discretion).   A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles.   *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).   A trial court does not have the discretion to refuse to enforce an unambiguous mediated settlement agreement.   TEX. FAM. CODE ANN. 6.602(c); *Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012) (holding that the parties' dispute over interpretation of mediated settlement agreement concerning property division was a matter of contract interpretation); *see also Vasquez v. Vasquez*, No. 13-15-00306-CV, 2016 WL 6804462, at *3 (Tex. App.—Corpus Christi Nov. 10, 2016, no

4

pet.) (mem. op.).

An MSA may be enforced as a contract and is binding on the parties. *See* TEX. FAM. CODE ANN. 6.602(c); *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). If the agreement is unambiguous, its construction is a question of law that we review de novo. *Shanks*, 110 S.W.3d at 447; *Wright v. Eckhardt*, 32 S.W.3d 891, 894 (Tex. App.—Corpus Christi 2000, no pet.) ("We determine the legal force and meaning of a marital property settlement agreement as we would any contract."). A trial court may enter a clarifying decree to enforce compliance with an insufficiently explicit decree but does not have the authority to alter the original disposition of property. TEX. FAM. CODE ANN. §§ 9.007(a), 9.008(b) (West, Westlaw 2017 through 1st C.S.); *Wright*, 32 S.W.3d at 894.

## B. The MSA is Not Ambiguous

The MSA provided that any retirement funds held in Efrain's TMRS plan over $100,000 would be divided in equal shares between Rita and Efrain. Rita argues that the Second Amended QDRO did not need clarifying and thus the trial court should not have revised it. Rita also appears to argue that the trial court's modifying language in the Third Amended QDRO to "exclude[] any portion based upon municipality contributions" changed the terms of the MSA.

The MSA specifies the distribution of Plan benefits based upon a 2012 valuation of Efrain's contributions. TMRS funds a participant's retirement through service credits to the individual member's account *and* "an additional amount from the benefit accumulation fund equal to the amount in the member's individual account" which is determined on the date of the member's retirement. *See* TEX. GOV'T CODE ANN.

5

§ 854.002(c) (West, Westlaw through 20171st C.S.).    Because the date of valuation is June 26, 2012 in the contested retirement account, the language used in the MSA does not entitle Rita to the employer's match which does not become effective until Efrain's retirement.   *See id.*

The MSA is unambiguous and the trial court's Third Amended QDRO properly reflects the agreement outlined in the MSA.   We overrule Rita's sole issue.

### III.   CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Delivered and filed the
20th day of November, 2018.

6