**Affirmed and Memorandum Opinion filed October 25, 2011.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-00645-CV

**MITCHELL ROBERT GOTTFRIED, Appellant**

**V.**

**MARIE ANNETTE GOTTFRIED, Appellee**

**On Appeal from the County Court at Law**
**Waller County, Texas**
**Trial Court Cause No. 03-11-17060**

## MEMORANDUM OPINION

Mitchell Gottfried petitioned the trial court to clarify a final decree of divorce and qualified domestic relations order addressing the portion of Mitchell's retirement benefits to be paid to his ex-wife, Marie Gottfried. In two issues, Mitchell argues that the trial court erred by (1) denying his motion to clarify the final decree and order; and (2) awarding attorney's fees to Marie. We affirm.

### BACKGROUND

Mitchell and Marie have married and divorced each other twice. The first marriage lasted from 1984 to 1995. Their second marriage lasted from 1996 to 2007.

Mitchell has worked as a teacher since 1979 and has accrued retirement benefits administered by the Teacher Retirement System of Texas (TRS).

The second divorce was tried before a jury, and the jury rendered an $80,000 verdict in Marie's favor. The jury found that Mitchell committed fraud and a breach of fiduciary duty. Before the trial court signed a judgment on the verdict, Mitchell and Marie recited a Rule 11 agreement in open court concerning the division of community property. This agreement included the portion of Mitchell's retirement account that accrued during the second marriage. The trial court signed an agreed final decree of divorce on June 26, 2007. On the same day, the court also signed a domestic relations order directed to the TRS explaining the disbursement of benefits to Marie, the alternate payee. *See* Tex. Gov't Code Ann. § 804.001(4) (Vernon 2004). The TRS notified the parties on September 10, 2007 that it approved the domestic relations order as a qualified domestic relations order (QDRO). *See id.* § 804.003. The relevant portions of the final decree and QDRO are reprinted respectively in Appendix A and Appendix B of this opinion.

Mitchell later communicated with the TRS about the QDRO's effect on his retirement benefits. The TRS informed Mitchell that the QDRO awarded Marie 100 percent of his retirement benefits accrued during the second marriage, and there was no cap on the amount of these benefits. The TRS applied the formula found in the QDRO and provided Mitchell with an illustration of the QDRO's effect on his retirement benefits.[1]

---

[1] The TRS reviewed the QDRO from the first marriage and the QDRO from the second marriage. The TRS noted that the QDRO from the second marriage awarded Marie 100 percent of the benefits accruing from 1996 to 2007; it did not award 100 percent of Mitchell's benefits from the time he began teaching in 1979. The TRS estimated that the QDRO from the second marriage effectively would award Marie 41.2658 percent of Mitchell's total monthly retirement benefit payment. Combined with the QDRO from the first marriage, Marie would receive 51.4859 percent of Mitchell's total monthly retirement benefit payment, and Mitchell would receive the remainder. These calculations presumed that Mitchell would retire before an increase in his average salary or service credit and would choose a standard service retirement annuity with no partial lump sum distribution.

Mitchell petitioned the trial court to clarify the 2007 decree and QDRO, contending that the TRS benefits awarded to Marie in connection with the second marriage were intended to be capped at $25,000 pursuant to the parties' Rule 11 agreement.[2]  After a bench trial, the court signed a final judgment denying the motion; the court concluded that the decree was unambiguous and did not limit the amount of the TRS benefits from the second marriage to $25,000.  The court also awarded $4,000 in trial attorney's fees and additional appellate attorney's fees to Marie.

## ANALYSIS

### I.    Clarification of a Final Decree of Divorce and QDRO

In his first issue, Mitchell argues that the trial court erred by denying his motion to clarify the 2007 decree because (1) the decree unambiguously included a $25,000 cap on the award of retirement benefits in connection with the second marriage; or (2) the decree was ambiguous, and the record shows that the parties intended to impose a $25,000 cap on the award.  Mitchell also argues that the trial court erred by not clarifying the QDRO because the QDRO (1) is ambiguous and cannot be implemented correctly by the TRS; and (2) improperly altered the substantive division of property contained in the decree.

We conclude the decree unambiguously did not include a $25,000 cap on the award of retirement benefits; the QDRO can be implemented by the TRS; and the QDRO did not alter the substantive division of property contained in the decree.

An agreed final decree of divorce is a consent judgment and treated as a contract between the parties.  *See McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 130–31 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Zeolla v. Zeolla*, 15 S.W.3d 239, 242 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  After a trial court enters the decree, the court has continuing jurisdiction to issue orders "to assist in the implementation of or to

---

[2] The parties agree on appeal that Mitchell's petition or motion was one to "clarify" both the decree and the QDRO, although Mitchell sought in his written petition "to clarify and enforce the division of property under the final decree of divorce and to withdraw and void prior domestic relations order."

clarify the prior order." Tex. Fam. Code Ann. § 9.007(a) (Vernon 2006); *see id.* § 9.002. Such an order may not "amend, modify, alter, or change the division of property made or approved in the decree of divorce." *Id.* § 9.007(a). This prohibition applies to a QDRO because a QDRO is a type of post-decree enforcement or clarification order. *See Quijano v. Quijano*, Nos. 14-09-01074-CV, 14-10-00567-CV, __ S.W.3d __, 2011 WL 3197709, at *6 (Tex. App.—Houston [14th Dist.] July 28, 2011, no pet. h.); *Gainous v. Gainous*, 219 S.W.3d 97, 107 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (op. on reh'g).

An order clarifying the decree may be necessary if the decree is ambiguous so that the division of property is not specific enough to be enforceable by contempt. *See McKnigh*t, 132 S.W.3d at 130 (citing Tex. Fam. Code Ann. § 9.008(b) (Vernon 2006)). If the decree is unambiguous, we must adhere to the literal language used; we do not look at "what the trial court should have done but, if possible, what the court actually did." *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). Whether a decree is ambiguous is a question of law we decide de novo. *McKnight*, 132 S.W.3d at 131; *see Shanks*, 110 S.W.3d at 447.

A QDRO is proper if it is consistent with the decree's unambiguous property division. *Reiss v. Reiss*, 118 S.W.3d 439, 442 (Tex. 2003). A clarified or amended QDRO may be necessary if a retirement plan administrator rejects the prior QDRO,[3] or "to correct the order or clarify the terms of the order to effectuate the division of property ordered by the court." Tex. Fam. Code Ann. § 9.1045 (Vernon 2006); *see Ganious*, 219 S.W.3d at 108, 111 (trial court should have issued a clarifying QDRO because prior QDRO did not effectuate division of property consistent with decree and, thus, was void); *McCaig v. McCaig*, No. 12-06-00374-CV, 2007 WL 1765845, at *3 (Tex. App.—Tyler June 20, 2007, pet. denied) (mem. op.) (same).

---

[3] *See McKnight*, 132 S.W.3d at 132 (citing Tex. Fam. Code Ann. § 9.104 (Vernon 2006)) (trial court erred by entering amended QDROs because there was "nothing in the record to indicate that the amended QDROs were necessary, *i.e.*, that the QDROs were submitted to and rejected by the plan administrator"); *accord Mullins v. Mullins*, 202 S.W.3d 869, 874 (Tex. App.—Dallas 2006, pet. denied).

## A. The Decree Is Not Ambiguous

The decree in this case awards to Mitchell as his separate property the amount of his TRS benefits "after payment to Marie" of one of three possible awards. The first two possible awards are designated in the decree under the Arabic numeral "1" and further delineated by letters "A" and "B." Under part 1.A, Marie would receive a "lump sum distribution of $25,000.00 if Mitchell R. Gottfried retires on or before January 31, 2007 (the earliest possible retirement date)." Under part 1.B, if a "net $25,000.00 is not available," Marie would receive "monthly distribution payments" from the TRS "until the net distributions total $25,000.00." The decree then states in a suspended paragraph, "or if Mitchell Gottfried does not retire at the earliest possible retirement date," and continues with Arabic numeral "2." Under part 2, Marie would receive "100% of the accrued benefit of Mitchell Gottfried which accrued during the period" of the marriage. Part 2 does not specifically limit the award to $25,000.

The parties agree that Mitchell did not retire on or before January 31, 2007, which is identified in the decree as "the earliest possible retirement date." Thus, parts 1.A and 1.B of the decree do not apply; only part 2 applies. Part 2 unambiguously awards Marie 100 percent of the benefit accrued during the second marriage without any limit on the ultimate amount awarded. This is the only reasonable interpretation of the decree, and the decree is specific enough to be enforceable by contempt.

Mitchell's request to impose a $25,000 cap on the award would be an impermissible collateral attack on the decree. *See Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) (citing Tex. Fam. Code Ann. § 9.007(a)) ("Attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack."). The trial court correctly concluded that the decree should not be amended.

## B. The QDRO Is Not Ambiguous, and It Can Be Implemented by the TRS

Mitchell argues that the QDRO is ambiguous and cannot be implemented properly by the TRS because the TRS stated that there was no $25,000 cap on the amount of

benefits awarded. Like the decree, the QDRO establishes three possible awards. The first two possible awards apply only if Mitchell's "effective retirement date is on or before January 31, 2007," and they include a cap of $25,000. The third possible award — which applies if Mitchell's "effective date of retirement is not on or before January 31, 2007" — gives Marie a "portion of the distribution of benefits or total accumulated contributions." Marie's portion is calculated by multiplying "100% of the participant's benefit distribution" by a fraction used to determine the portion of benefits awarded that accrued during the marriage.

Mitchell argues that the formula contained in the QDRO for awarding benefits to Marie is "complex and confusing, and it is seemingly impossible to use the formula to ascertain any specific dollar amount to pay Marie from Mitchell's account. Nor does the formula make it possible to compute a percentage of Mitchell's TRS account payments that will be paid to Marie." We disagree; so does the TRS.

Mitchell's Exhibit 1 at trial is a letter from the TRS dated July 22, 2008. The letter illustrates for Mitchell the effects of the QDRO and provides calculations — with dollar amounts — to show how his retirement benefits will be distributed under the QDRO. The letter shows that Marie would be awarded $1,379.56 per month out of Mitchell's $3,343.11 monthly distribution under the QDRO in this case. The TRS "calculated the awarded community property interest under this QDRO as 41.2658%." Bill Hagen, who had experience in preparing QDROs and working with TRS administrators, testified that the TRS letter was an illustration showing that the TRS could apply the formula from the QDRO.[4]

Accordingly, we conclude that the QDRO is not ambiguous, and the record evidence shows that it can be implemented by the TRS. Nothing in the record suggests

---

[4] Indeed, the QDRO formula tracks the model domestic relations order available on the TRS website. *See* Teacher Retirement System of Texas (TRS) Model Domestic Relations Order Dividing Retirement Plan Benefits (July 2005), http://www.trs.state.tx.us/benefits/documents/qdro_model_intro.pdf.

that an amended QDRO is necessary in this case. *See McKnight*, 132 S.W.3d at 132. The trial court correctly denied Mitchell's motion to clarify the QDRO.

### C. The QDRO Does Not Alter the Substantive Division of Property Contained in the Decree

Mitchell's argument that the QDRO alters the substantive division of property fails because it is based on his assumption that the final decree included a $25,000 cap on the award of retirement benefits if — as is the undisputed fact here — Mitchell retires after January 31, 2007. As we concluded above, the decree unambiguously contains no such limitation. The QDRO is proper in this case because it implements the decree without altering the substantive division of property. *See Reiss*, 118 S.W.3d at 442. Thus, the trial court correctly denied Mitchell's motion.[5]

Mitchell's first issue is overruled.

## II. Attorney's Fees

In his second issue, Mitchell argues the trial court had "no reasonable basis" to award $4,000 in attorney's fees to Marie because Mitchell was merely following the court's order. Mitchell contends, "The Court's order stated that if a problem with the [Q]DRO arose, the 'parties shall immediately petition the Court for reformation of the order.'"

We disagree with Mitchell's interpretation of the trial court's order, which stated that the parties shall petition the court for reformation of the order if "the [TRS] determines at any time that changes in the law, the administration of the Plan, or any other circumstances make it impossible to calculate the portion of a distribution awarded to [Marie] by this order and so notifies the parties." There is no evidence in the record to suggest that the TRS notified the parties it could not calculate the portion of a distribution

---

[5] To the extent Mitchell complains about the provision of 8.25 percent interest in part a.2 of the QDRO, we note that this provision is irrelevant because Mitchell did not retire on or before January 31, 2007. Any complaint about this provision is moot.

awarded to Marie. To the contrary, the TRS provided Mitchell with an illustrative calculation of the portion of the distribution awarded to Marie. Mitchell simply disagrees with the TRS's calculation.

Further, although Marie requested attorney's fees under theories for which there is doubtful legal or factual basis in this case,[6] the Family Code nonetheless authorizes attorney's fees. Under the Family Code, a trial court "may award reasonable attorney's fees" in a proceeding to clarify a decree or QDRO. *See* Tex. Fam. Code Ann. § 9.014 (Vernon Supp. 2009) (decree); *id.* § 9.106 (QDRO); *see also, e.g.*, *McKnight*, 132 S.W.3d at 132. We review the trial court's decision to award attorney's fees for an abuse of discretion. *McKnight*, 132 S.W.3d at 132; *Schneider v. Schneider*, 5 S.W.3d 925, 930 (Tex. App.—Austin 1999, no pet.). The reasonableness of the amount of fees is not disputed. Given that Mitchell's request to clarify the decree and QDRO was denied, and the bench trial lasted several days on issues largely determinable by referencing the unambiguous decree and QDRO, we conclude that the trial court did not abuse its discretion by awarding attorney's fees to Marie. *See Schneider*, 5 S.W.3d at 930.[7]

Mitchell's second issue is overruled.

---

[6] Marie requested attorney's fees as sanctions and for breach of contract under Chapter 38 of the Civil Practice and Remedies Code.

[7] Marie's request for attorney's fees under a different statute does not preclude an award of fees under the Family Code. *See, e.g.*, *Alford v. Marino*, No. 14-04-00912-CV, 2005 WL 3310114, at *7–8 & n.7 (Tex. App.—Houston [14th Dist.] Dec. 8, 2005, no pet.) (mem. op.) (affirming attorney's fees award, even though the plaintiff requested fees only under Chapter 38 of the Civil Practice and Remedies Code, because the plaintiff pleaded facts that would have entitled her to fees under Section 668 of the Probate Code); *Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (affirming attorney's fees award, even though the plaintiff only requested fees under the Declaratory Judgment Act and Uniform Condominium Act, because the petition included facts that would authorize fees under section 5.006(a) of the Property Code); *see also Morrell Masonry Supply, Inc. v. Scott Griffin & Assocs., Inc.*, No. 01-09-01147-CV, 2011 WL 2089677, at *8–9 (Tex. App.—Houston [1st Dist.] May 19, 2011, no pet.) (mem. op.) (citing *Mitchell*, 60 S.W.3d 123) ("The Fourteenth Court of Appeals has held that a party's pleading facts that entitle it to attorney's fees under a particular statute and a general request for attorney's fees can support an award of attorney's fees under a different, unpleaded statute;" affirming award of attorney's fees because the plaintiff pleaded facts entitling it to attorney's fees and the defendant could not claim surprise because its own pleadings sought attorney's fees under the proper statute).

**CONCLUSION**

Having overruled all of Mitchell's issues, we affirm the trial court's judgment.

/s/ William J. Boyce
Justice

Panel consists of Justices Brown, Boyce, and McCally.

IT IS ORDERED AND DECREED that the husband, Mitchell Robert Gottfried, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

*          *          *

H-5.  The balance of Mitchell Robert Gottfried's retirement benefits in Teacher Retirement System arising out of Mitchell Robert Gottfried's employment with various school districts from the date of the marriage to the date this decree is executed, after payment to Marie Annette Gottfried of:

> 1.      A.      A net lump sum distribution of $25,000.00, if Mitchell R. Gottfried retires on or before January 31, 2007 (the earliest possible retirement date), under the rule that allows for normal retirement when the participant's age and service totals 80, or
>
>       B.      if a net $25,000.00 is not available, then the net (after tax) monthly retirement payments from Teacher's Retirement System, which would otherwise be payable to Mitchell Robert Gottfried, until the net distributions total $25,000.00.  All distributions shall be reported as distributions to Mitchell Robert Gottfried, and taxes reported in the name of Mitchell Robert Gottfried;

or if Mitchell Gottfried does not retire at the earliest possible retirement date,

> 2.      100% of the accrued benefit of Mitchell Gottfried which accrued during the period beginning September 27, 1996 (the date of marriage), and ending on the date this decree is signed; together with any interest, dividends, gains, or losses on that amount arising since the date this decree is signed and more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this Final Decree of Divorce is signed.

## APPENDIX B:  DOMESTIC RELATIONS ORDER

a.  If the participant's effective retirement date is on or before January 31, 2007,

     1.      The alternate payee shall receive a one time single sum payment of $25,000.00 net after tax withholding; or

     2.      In the alternative, if the participant elects not to receive a single sum payment, or if such single sum payment is not sufficient to provide $25,000.00 net payment after tax withholding, then the alternate payee shall receive 100% of all net (after tax withholding) periodic retirement payments until the total of all such periodic payments equals $25,000.00, with the unpaid balance increased at an interest rate of 8.25% per annum from January 31, 2007 until the date of last payment. Each periodic unpaid balance shall be determined by increasing the previous periodic unpaid balance by the periodic equivalent of 8.25% interest per annum and reducing the unpaid balance after it has been improved by interest by the net period retirement payment made by the plan to the alternate payee. In this instance, and all distributions should be reported as distributions to the participant not the alternate payee, and all taxes withheld reported in the name and social security number of the participant, not the alternate payee; OR

b.  If Participant's effective date of retirement is not on or before January 31, 2007, Alternate Payee is awarded and shall receive from the Plan, a portion of each distribution of service retirement benefits or disability retirement benefits (whether payable to Participant or a beneficiary) and death or survivor benefits (including distribution of the remaining balance of Participant's accumulated contributions paid as a death benefit) if, as, and when such distributions are made as provided by the Plan's governing laws and rules based on Participant's membership in, credit with, or contributions to the Plan. Alternatively, in lieu of these benefits, Alternate Payee is awarded and shall receive from the Plan, a portion of the distribution of Participant's total accumulated contributions to the Plan if, as, and when such distribution is made as provided by the Plan's governing laws and rules. The term "accumulated contributions" as used in this order is defined by section 821.001(1) of the Texas Government Code or its successor statute.

The portion of the distribution of benefits or total accumulated contributions that is awarded and that is to be paid to Alternate Payee, shall be determined by multiplying the distribution by a fraction, which will be determined as set forth below:

Multiply 100% of the participant's benefit distribution, by a fraction, the NUMERATOR of which is the amount of a standard service retirement annuity unreduced for early retirement calculated under the retirement law and rules in effect on the effective date of this order but using only service and salary credit that TRS determines has been acquired by Participant between September 27, 1996 and the effective date of this order and maintained with the System as of the effective date of this order, even if Participant has not yet reached normal retirement age, the service credit is less than the minimum required to be eligible to receive a service retirement annuity, and the average salary must be calculated with fewer salary years than specified by applicable laws and rules and the DENOMINATOR of which is, for distributions made after the retirement of Participant, the amount of a standard service retirement annuity unreduced for early retirement calculated under the laws and rules in effect at the time of Participant's latest effective date of retirement and based on Participant's membership in, credit with, or contributions to the System as of Participant's latest effective date of retirement.

For distributions made prior to the retirement of Participant, the DENOMINATOR is the amount of a standard service retirement annuity, unreduced for early retirement, that would have been used to calculate the service retirement benefit payable if Participant had retired at the end of the month in which the distribution is authorized to be made. For the purpose of determining the amount of a normal age standard service retirement annuity that would have been used to calculate the benefit payable if Participant had retired, the Plan may calculate the annuity by using the service credit acquired and maintained by Participant, even if it is less than the minimum required to be eligible to receive a service retirement annuity, and by using an average salary, even if it must calculated with fewer salary years than specified by applicable laws and rules. For the purpose of calculating the denominator, a distribution made after Participant has retired but later has resumed membership in the System and has not yet retired is considered to be a distribution made prior to retirement. The term "standard service retirement annuity" as used in this order is defined by section 824.203 of the Texas Government Code or its successor statute.