John Frank McKNIGHT, Appellant

v.

Jennifer L. TROGDON–McKNIGHT, Appellee.

No. 14–02–00800–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 30, 2004.

Shawn Russel Casey, Houston, for appellant.

Marshall Davis Brown, Jr., Houston, for appellee.

Panel consists of Justices YATES, HUDSON, and FOWLER.

## OPINION

J. HARVEY HUDSON, Justice.

In this restricted appeal, appellant, John Frank McKnight, appeals the trial court's judgment entry of a clarification order,

new qualified domestic relations orders, a stock division order, and a monetary judgment in favor of Jennifer L. Trogdon–McKnight. We reverse and render, in part, and reverse and remand, in part.

On March 21, 2000, John and Jennifer entered into an agreed final decree of divorce. On September 6, 2000, the trial court entered two qualified domestic relations orders ("QDROs") effectuating the divorce decree's division of John's retirement plans.

On July 16, 2001, asserting that the original decree was not specific enough to be enforced through contempt, Jennifer filed a motion for clarification of the divorce decree, requesting that the court (1) order that the parties' house be listed with a designated real estate broker for sale to a third party; (2) enter an order for the division of certain stock options; (3) order John to pay Jennifer 50% of any monies received by him for any and all stock options arising out of his employment with National Fuel Gas that were awarded to Jennifer that were exercised, sold, transferred, conveyed, and/or cashed by John; and (4) order John to turn over the keys to a storage facility where Jennifer alleged that her personal property was located. Also asserting that the September 6, 2000, QDROs contained numerous errors and did not accurately reflect the decree, Jennifer requested that the trial court enter amended QDROs to effectuate the partition of John's National Fuel Gas retirement and tax-deferred savings plans.

On January 28, 2002, the trial court held a hearing on Jennifer's motion to clarify and entered a clarifying order. On April 4, 2002, the trial court entered new QDROs, revoking the September 6, 2000 QDROs, and further entered an order dividing the stock options. Asserting that the January 28, 2002 clarification order, the April 4, 2002 amended QDROs, and the April 4, 2002 order dividing the stock options substantively changed the terms of the original divorce decree and the previous QDROs, John seeks to set aside those orders by way of this restricted appeal.

## I. RESTRICTED APPEAL

John contends he has met all jurisdictional prerequisites entitling him to bring this restricted appeal. A direct attack on a judgment by restricted appeal must (1) be brought within six months after the trial court signs the judgment, (2) by a party to the suit, (3) who did not participate in the actual trial, and (4) the error complained of must be apparent on the face of the record. TEX.R.APP. P. 30. Review by restricted appeal affords the appellant the same scope of review as an ordinary appeal, *i.e.*, review of the entire case. *Norman Communications v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam).

John perfected this appeal on July 26, 2002, within six months after the January 28, 2002 clarification order, and he was a party to the suit. Jennifer challenges John's assertions that (1) he did not participate and (2) error is apparent on the face of the record.

### A. Participation in the Trial

The nature and extent of participation precluding a restricted appeal in any particular case is a matter of degree because trial courts decide cases in a myriad of procedural settings. *Texaco, Inc. v. Central Power & Light Co.*, 925 S.W.2d 586, 589 (Tex.1996). The issue is whether the appellant participated in the decision-making event that results in the judgment adjudicating the appellant's rights. *Id.* It is the fact of nonparticipation, not the reason for it, that determines the right to a restricted appeal. *Id.* 590.

Jennifer asserts John took part in all of the decision making events and the critical hearings, including the entry of the agreed final decree of divorce on March 17, 2000, which ultimately determined the parties' rights pursuant to the decree, thereby precluding this restricted appeal. We disagree with Jennifer's assertion that John participated in the events that determined the parties' rights. While John may have participated up to the point of the final divorce decree, he did not participate in the proceedings resulting in the clarification order, the amended QDROs, or the stock division order. Therefore, we conclude John has satisfied the nonparticipation element of a restricted appeal.

## B. Error on the Face of the Record

■ John argues there is error on the face of the record because (1) the clarification order, the order dividing stock options, and the April 4, 2002 QDROs contain provisions that substantively alter the original divorce decree and the September 6, 2000 QDROs, and (2) the relief granted to Jennifer was substantively more than the scope of the notice she afforded to John in her motion to clarify. For purposes of a restricted appeal, the face of the record consists of all the papers on file before the judgment, including the reporter's record. *Norman Communications,* 955 S.W.2d at 270. For the reasons stated below, we also conclude there is error on the face of the record. Thus, John has met all the requirements for bringing a restricted appeal.

### 1. Sale of the Property

■ John asserts that the clarification order substantively changes the terms of the agreed divorce decree with regard to the sale of the house by (1) ignoring his right to have the house appraised and his right to purchase the house for the appraised value; (2) ignoring his right of first refusal to purchase the house by matching any proposed sale; (3) granting Jennifer the sole right to determine the price at which the property will be listed for sale; and (4) appointing a receiver in the event the parties fail to agree on a sales price or if either party refuses to sign any documents necessary to effectuate the sale of the property.

■■ If the trial court finds the original form of the division of property in a divorce decree is ambiguous or not specific enough to be enforceable by contempt, it may enter a clarifying order to enforce compliance with original division of the property. TEX. FAM.CODE ANN. § 9.008(b) (Vernon 1998);[1] *Wright v. Eckhardt,* 32 S.W.3d 891, 894 (Tex.App.-Corpus Christi 2000, no pet.); *Kimsey v. Kimsey,* 965 S.W.2d 690, 695 (Tex.App.-El Paso 1998, pet. denied). A valid clarification order is consistent with the divorce decree and " 'merely enforces by appropriate order the controlling settlement agreement.' " *Wright,* 32 S.W.3d at 894 (quoting *Young v. Young,* 810 S.W.2d 850, 851 (Tex.App.-Dallas 1991, writ denied)). In the absence of an ambiguity, the trial court is without authority to modify the judgment. *Pearcy v. Pearcy,* 884 S.W.2d 512, 514 (Tex.App.-San Antonio 1994, no writ).

■ Agreed judgments are interpreted in accordance with contract law. *Zeolla v. Zeolla,* 15 S.W.3d 239, 242 (Tex. App.-Houston [14th Dist.] 2000, pet. de-

---

1. Section 9.008(b) of the Texas Family Code provides, in relevant part:
   (b) On a finding by the court that the original form of the division of property is not specific enough to be enforceable by con-tempt, the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property.
   TEX. FAM.CODE ANN. § 9.008(b).

nied) (citing *Harvey v. Harvey,* 905 S.W.2d 760, 764 (Tex.App.-Austin 1995, no writ)). Whether the decree is ambiguous is a question of law subject to de novo review. *Bishop v. Bishop,* 74 S.W.3d 877, 880 (Tex. App.-San Antonio 2002, no pet.); *Wright,* 32 S.W.3d at 894. A contract is ambiguous when its meaning is uncertain or doubtful or it is reasonably susceptible to more than one meaning. *Zeolla,* 15 S.W.3d at 242. When a contract contains an ambiguity, its interpretation is a question of fact. *Id.*

Jennifer offers no explanation for the reason the agreed divorce decree is ambiguous with respect to the sale of the house or not specific enough to be enforced by contempt. Indeed, after reviewing that portion of the divorce decree, we conclude it is not ambiguous. In the absence of any ambiguity, the trial court had no authority to change the terms of the decree with regard to the sale of the house by way of a clarifying order.

### 2. Stock Division Order

The divorce decree awarded John and Jennifer each one-half of John's stock options arising out of John's employment with National Fuel Gas. John seeks to set aside the stock division order, asserting that it substantively changes the terms of the divorce decree. Jennifer offers no argument explaining why the portion of the decree ordering the division of the stock is ambiguous. Our review of the agreed divorce decree reveals no ambiguity. Thus, the trial court was without authority to enter the stock division order. *See Pearcy,* 884 S.W.2d at 514.

### 3. Judgment for Insurance and Mortgage Proceeds

John further complains that the trial court erred in entering a judgment in favor of Jennifer for a portion of the homeowner's insurance proceeds and mortgage overpayments when she did not plead for those proceeds. We agree.

John received a check in the amount of $31,500 from the insurance company for flood damage to the house, and subsequently used that money to pay the balance on the mortgage due on the property. Having overpaid the mortgage, John received a check from the mortgage company for the overpayment. Jennifer did not plead for recovery of any portion of the insurance or mortgage overpayment proceeds, but waited until the hearing on her motion to clarify to request such relief. The trial court awarded her a judgment for 55% of any insurance proceeds not used to pay off the mortgage and 55% of whatever he received from the mortgage company for overpayment of the balance of the mortgage.

A default judgment must be supported by the pleadings. *Stoner v. Thompson,* 578 S.W.2d 679, 682 (Tex.1979). The defendant must have fair notice of the plaintiff's cause of action and the relief sought. *Id.* at 683; *Lakeside Leasing Corp. v. Kirkwood Atrium Office Park Phase 3,* 750 S.W.2d 847, 850 (Tex.App.-Houston [14th Dist.] 1988, no writ). Jennifer did not plead for any portion of the insurance or mortgage proceeds in her motion to clarify. Instead, she waited until the hearing on her motion to request such relief. Because there are no pleadings to support a judgment awarding Jennifer 55% of the insurance and mortgage overpayment proceeds, the trial court erred in entering such judgment. *See Stoner,* 578 S.W.2d at 683 (holding in default judgment case that where pleadings did not mention that plaintiff had sustained money damages, defendant did not have fair notice that trial court might award money damages against it); *Lakeside Leasing Corp.,* 750 S.W.2d at 850 (holding in default judgment case that be-

cause plaintiff's petition did not provide defendants with notice of damages awarded, such award could not stand).

### 4. Qualified Domestic Relations Orders

■ John further asserts the April 4, 2002, QDROs substantively change the terms of the September 6, 2000 QDROs, which constituted enforceable contracts. Jennifer contends that there are no substantive changes, but merely argues, without explanation, that the April 4, 2002 QDROs reflect the terms of the divorce decree. The trial court has continuing jurisdiction to enter orders necessary to amend or correct QDROs to ensure that they are qualified and enforceable. *Dechon v. Dechon,* 909 S.W.2d 950, 961 n. 9 (Tex.App.-El Paso 1995, no writ); *see also* TEX. FAM.CODE ANN. § 9.101 (Vernon 1998) (providing that court which rendered final decree of divorce dividing property retains continuing, exclusive jurisdiction to render enforceable QDRO permitting payment of pension, retirement plan, or other employee benefits to alternate payee). However, we find nothing in the record to indicate that amended QDROs were necessary, *i.e.,* that the QDROs were submitted to and rejected by the plan administrator. *See* TEX. FAM.CODE ANN. § 9.104 (Vernon 1998) (providing that if plan administrator determines that domestic relations order does not satisfy requirements of QDRO or similar order, court retains continuing, exclusive jurisdiction over parties and their property to extent necessary to render QDRO). Moreover, after reviewing the September 6, 2000 QDROs, we do not find that they fail to reflect the terms of the divorce decree. Thus, we find the trial court erred in entering amended QDROs.

### II. ATTORNEY FEES

■ The trial court awarded Jennifer $1,686.47 in attorney fees. The trial court may award reasonable attorney fees in a proceeding to enforce or clarify a divorce decree. TEX. FAM.CODE ANN. § 9.014 (Vernon 1998). It is within the trial court's discretion to award attorney fees. *McMann v. McMann,* 942 S.W.2d 94, 96 (Tex.App.-Houston [1st Dist.] 1997, no writ). However, because the trial court had no authority to enter the order to clarify, it abused its discretion in awarding Jennifer attorney fees.

### III. SANCTIONS

■ Jennifer alleges that John has brought this appeal for the sole purpose of delay as evidenced by a pattern of conduct since the entry of the divorce decree and seeks sanctions in accordance with Rule 45 of the Texas Rules of Appellate Procedure for the filing of a frivolous appeal, requesting that we award her costs of this appeal as well as any sanctions we find appropriate. *See* TEX.R.APP. P. 45. Because the trial court (1) was without authority to enter the clarifying order and the stock division order, (2) erred in awarding Jennifer a judgment on the insurance and mortgage overpayment proceeds, and (3) erred in entering the amended QDROs, we do not find that John's appeal was frivolous and brought without sufficient cause and merely for delay. Jennifer's request for sanctions is denied.

### IV. CONCLUSION

Accordingly, we reverse the award of attorney fees and render judgment that Jennifer not recover on her claim for attorney fees. We also reverse the clarifying order, stock division order, and amended QDROs and remand those orders to the trial court with instructions to withdraw those orders. Likewise, we order the trial court to reform its judgment to eliminate the award to Jennifer of 55% of the insur-

ance and mortgage overpayment proceeds. Thus, we reverse and render, in part, and reverse and remand, in part.