NO. 07-04-0366-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 4, 2005

_____

IN THE MATTER OF THE MARRIAGE OF MISTY JEAN HAMMIT
AND KENNETH BRIT HAMMIT AND IN THE INTEREST OF
KENNETH DAKOTA HAMMIT, HALEY ELIZABETH  HAMMIT,
AND TORI ANNE HAMMIT, CHILDREN
_____

FROM THE 316TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 33,669; HONORABLE JOHN LAGRONE, JUDGE

_____

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Misty Jean Hammit challenges an order clarifying her final decree of

divorce,[1] as it concerned certain real estate awarded to appellee Kenneth Brit Hammit.

Presenting a single point of error, Misty contends the clarifying order signed by the trial

_____

[1]The order under review is the post trial order signed on June 3, 2004.

court changed the actual substantive division of property made by the decree of divorce. Based on the rationale expressed below, we affirm.

Among other provisions, the decree of divorce signed May 24, 2001, awarded the homestead of the parties to Kenneth but imposed an encumbrance on the homestead, located at 403 S. Holmes in Fritch, Texas, to secure Kenneth's payment of an owelty of partition of $7,629.69 to Misty payable in monthly installments of $109.49 and commencing May 15, 2001. Following a hearing on Kenneth's motion for clarification, the trial court signed an order on July 1, 2003, clarifying the decree of divorce.[2] After reciting that the provisions of the original decree regarding payment of the $7,629.69 to Misty and the award of the homestead were ambiguous, unclear, and contradictory and were not specific enough to be enforceable by contempt, the July 1 order partially modified the terms of the original decree as follows:

> The encumbrance is to secure the payment of the debt of Respondent in favor of Petitioner of $7629.69, resulting from the award of the homestead in this divorce proceeding. As a result of prior child support offsets for 19 months of child support, beginning in April 2001 and ending in October, 2002, with said offsets totaling $2080.31, the encumbrance now totals $5549.38. This debt shall be the subject of a promissory note executed by Kenneth Brit Hammit payable to Misty Jean Lane f/k/a Misty Jean Hammit which shall bear interest at the rate of 6% per year with interest beginning on October 23, 2002. The note shall be for a term of 60 months with the first payment being due and payable on or about August 1, 2003 and a like payment due on the first day of each month thereafter until paid in full. There will be no penalty for early pay-off. The promissory note will be

---

[2]The motion for clarification and the order signed July 1, 2003, make no reference or citation to Family Code sections 9.001, 9.006(b), or 9.008.

2

secured by a deed of trust executed by Kenneth Brit Hammit in favor of Misty Jean Lane f/k/a Misty Jean Hammit, Beneficiary, on the property described above.  At the time of the execution of the promissory note and deed of trust by Kenneth Brit Hammit, Misty Jean Lane f/k/a Misty Jean Hammit will also execute a Special Warranty Deed on the property described above conveying all her interests in said real property to Kenneth Brit Hammit, subject to her Deed of Trust.  Upon full satisfaction of the promissory note described above, Misty Jean Lane f/k/a Misty Jean Hammit will immediately execute a Release of the Deed of Trust described above.

IT IS FURTHER ORDERED that Kenneth Brit Hammit shall sell the property within five years from the date of the decree.  Upon such sale, Kenneth Brit Hammit shall pay the balance of the debt owed on said property.

Although neither party gave notice of appeal of the July 1 order,[3] on September 22, 2003, Kenneth filed his first amended motion for clarification by which he sought further clarification of the original decree as it related to the homestead and the owelty of partition payable to Misty.  Kenneth's amended motion did not make any reference to or seek any modification or clarification of the original decree as it was modified by the July 1 order. The clerk's record does not show any service on Misty or a response or answer by Misty. However, according to the reporter's record, Kenneth and Misty both appeared in person and by counsel on October 13, 2003, and presented testimony regarding the relief sought by Kenneth's amended motion.  After taking the matter under advisement, on June 3, 2004, the trial court signed a second order clarifying the final decree of divorce.  No findings of fact or conclusions of law were requested or filed.

---

[3]According to the clerk's record, the order modifying the original decree signed July 1 was not set aside or modified by the trial court.

3

By her sole point of error, Misty contends the trial court erred in granting Kenneth's motion to clarify the decree of divorce. We disagree. Misty's notice of appeal was directed to the trial court order signed June 3, 2004. Because a notice of appeal directed to the order clarifying the final decree of divorce signed July 1, 2003, was never filed, the order signed in 2003 was final at the time of the hearing on October 13, 2003, and on June 3, 2004 when the second order was signed. *See* State ex rel. Latty v. Owens, 907 S.W.2d 484, 485 (Tex. 1995).

Misty focuses her argument on the provision of the original decree stating that upon the sale of the homestead, the balance of the sale proceeds should be divided between Kenneth and Misty equally. Contending that the provision was not ambiguous, and citing sections 9.007(a) and 9.008(b) of the Family Code, Misty contends the trial court erred in excising that part of the decree. Although the order signed July 1, 2003, made textual changes to the provision regarding the sale of the homestead, the June 3, 2004 order made no changes. As material here, the June 3 order now under review provides as follows:

> The debt was paid within five years. Therefore, the Court finds that the owelty lien has been extinguished and full title vested in Brit Hammit.
>
> Further, the Court finds that the contingency that the real property be sold after five years if the debt has not been paid has been extinguished and is a nullity because of payment within five years.
>
> The parties are ORDERED to execute all necessary documents evidencing that full title has vested in Brit Hammit including but not limited to a Quitclaim Deed from Misty Jean Hammit to Brit Hammit and a Release of

4

Lien by Misty Hammit in favor of Brit Hammit within 30 days of this order becoming final.

Moreover, because a lien is but only an incident of a debt or obligation, the trial court did not err in concluding that payment in full of the owelty debt to Misty extinguished the lien. Bank of Woodson v. Hibbitts, 626 S.W.2d 133, 136 (Tex.App.–Eastland 1981, writ ref'd n.r.e.).

Where, as here, the record does not contain findings of fact or conclusions of law, the judgment will be affirmed if it was proper under any legal theory supported by the record. Garcia v. Mireles, 14 S.W.3d 839, 842 (Tex.App.–Amarillo 2000, no pet.). Because we presume on appeal that the action of the trial court was justified and the burden of proof is on the party asserting error, Misty's sole point of error is overruled.

Accordingly, the trial court's order is affirmed.


Don H. Reavis
Justice


Quinn, C.J., concurring.

Hancock, J., concurring.

NO. 07-04-0366-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 4, 2005

_____

IN THE MATTER OF THE MARRIAGE OF MISTY JEAN HAMMIT
AND KENNETH BRIT HAMMIT AND IN THE INTEREST OF
KENNETH DAKOTA HAMMIT, HALEY ELIZABETH HAMMIT,
AND TORI ANNE HAMMIT, CHILDREN
_____

FROM THE 316TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 33,669; HON. JOHN LAGRONE, PRESIDING
_____

***Concurring Opinion***
_____

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

I concur in the result reached by Justice Reavis but write separately to explain my reason for affirming the judgment.

A trial court may clarify those parts of a prior judgment involving the division of the marital estate. TEX. FAM. CODE ANN. §9.008(b) (Vernon 1998). However, the prior division must either be ambiguous or sufficiently vague to render the division unsusceptible to enforcement by contempt. *Id.*; *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 130 (Tex.

6

App.–Houston [14[th] Dist.] 2004, no pet.); *Wright v. Eckhardt*, 32 S.W.3d 891, 894 (Tex. App.–Corpus Christi 2000, no pet.).

Next, whether a decree is ambiguous is a question of law which we review *de novo*. *McKnight,* 132 S.W.3d at 131*.* Furthermore, in construing a judgment we apply the same rules used to interpret written documents in general. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404-05 (Tex. 1971). This requires us to read the document as a whole, *id.*, and attempt to determine from its words the intent of the trial court. *Stettner Clinic, Inc. v. Burns*, 61 S.W.3d 16, 18-19 (Tex. App.–Amarillo 2000, no pet.). And, only if the judgment or portions thereof are uncertain, doubtful or reasonably susceptible to more than one meaning, when read as a whole, may we deem it ambiguous. *McKnight v. Trogdon-McKnight*, 132 S.W.3d at 131.

I readily concede that the judgment directs Kenneth Hammit to "sell the [community homestead] within five years from the date of the decree . . . pay the balance of the debt owed on said property and [divide] the balance ... between [himself] and Misty . . . Hammit equally." If that were the only provision dealing with the community homestead, I would have to consider it clear and unambiguous. Simply put, Kenneth would be obligated to sell the property and divide the net proceeds with his ex-wife. Yet, the judgment contains another provision dealing with the very same parcel of realty and, the rules of construction prevent us from ignoring it. The provision of which I speak grants the homestead to Kenneth "as his sole and separate property" and divests Misty of "all right, title, interest, and claim in" it. By according those words their plain meaning, one could not but

7

reasonably conclude that between Kenneth and Misty, the latter no longer had any claim to or interest in the property. So, what appeared in the original judgment were two provisions concerning the homestead, one of which grants Misty an interest in it upon its sale while the other divests her of all interest in it. Given this, I find the judgment to be susceptible to two reasonable yet contradictory provisions and, therefore, ambiguous. So, being ambiguous, the provisions were subject to clarification in accordance with the trial court's original intentions.

Next, the record indicates that the trial court recalled little about why it disposed of the homestead as it did. Nonetheless, the trial judge stated, of record, that his "main focus on both sides was the children." To this he added: ". . . normally I feel like the kids ought to stay in the house because that's the least destructive way to go. And I wouldn't have put any restrictions on when you have to sell it or pay it off because I feel like the kids need to be in a familiar environment." Though both Kenneth and Misty were awarded joint conservatorship over their children, Kenneth was granted the power to establish their primary residence. In other words, the children were to live with him. This, along with the trial judge's clarification order nullifying Kenneth's obligation to sell the house and share the proceeds with Misty, comports with the trial court's stated intent to allow the children to remain in the house without "any restrictions."

Additionally, locating within the section of the judgment entitled "Owelty of Partition" the paragraph that obligated Kenneth to sell the house is also informative. Through the other paragraphs under that section the trial court not only evinced its intent to place an

8

encumbrance upon the homestead to secure payment of only the $7,629 in owelty but also created such an encumbrance. It seems rather logical to infer that the trial court had an interest in assuring that the owelty was paid, and requiring that it be paid through the sale of the homestead (if not the debt was not otherwise satisfied) is a practical means of effectuating that desire. And, this would explain why it ordered Kenneth to sell the house in five years and pay the debts due Misty.

So when I combine the reason for ordering the sale of the house with the trial court's customary intent to give the house (without any time restrictions) to the parent who keeps the children, I conclude that the trial court originally intended to actually award the home to Kenneth (who has the children) in fee subject to loss only upon his failure to pay the owelty within five years. And, the clarifying order at issue fulfills that intent since Kenneth paid the owelty. Thus, he need not sell the homestead and divide the proceeds with Misty.

Accordingly, I too vote to affirm the trial court's clarification order.


Brian Quinn
Chief Justice

NO. 07-04-0366-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 4, 2005

_____

IN THE MATTER OF THE MARRIAGE OF MISTY JEAN HAMMIT
AND KENNETH BRIT HAMMIT AND IN THE INTEREST OF
KENNETH DAKOTA HAMMIT, HALEY ELIZABETH  HAMMIT,
AND TORI ANNE HAMMIT, CHILDREN
_____

FROM THE 316TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 33,669; HONORABLE JOHN LAGRONE, JUDGE
_____

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

**CONCURRING OPINION**

I would concur with the results reached by Justice Reavis, but agree with the reasoning as expressed by Chief Justice Quinn in holding that the two paragraphs at issue are ambiguous and in need of clarification.  I would, therefore, affirm the trial court's clarification.

Mackey K. Hancock
Justice