NO. 07-04-0366-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 4, 2005

______________________________

IN THE MATTER OF THE MARRIAGE OF MISTY JEAN HAMMIT

AND KENNETH BRIT HAMMIT AND IN THE INTEREST OF

KENNETH DAKOTA HAMMIT, HALEY ELIZABETH HAMMIT,

AND TORI ANNE HAMMIT, CHILDREN

_________________________________

FROM THE 316
TH
 DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 33,669; HON. JOHN LAGRONE, PRESIDING

_______________________________

Concurring Opinion

_______________________________

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

I concur in the result reached by Justice Reavis but write separately to explain my reason for affirming the judgment.  

A trial court may clarify those parts of a prior judgment involving the division of the marital estate.  
Tex. Fam. Code Ann
.
 §9.008(b) (Vernon 1998).  However, the prior division must either be ambiguous or sufficiently vague to render the division unsusceptible to enforcement by contempt.  
Id.
; 
McKnight v. Trogdon-McKnight
, 132 S.W.3d 126, 130 (Tex. App.–Houston [14
th
 Dist.] 2004, no pet.); 
Wright v. Eckhardt
, 32 S.W.3d 891, 894 (Tex. App.–Corpus Christi 2000, no pet.). 

Next, whether a decree is ambiguous is a question of law which we review 
de novo
.  
McKnight, 
132 S.W.3d at 131
.
  
Furthermore, in construing a judgment we apply the same rules used to interpret written documents in general.  
Lone Star Cement Corp. v. Fair
, 467 S.W.2d 402, 404-05 (Tex. 1971).  This requires us to read the document 
as a whole, 
id.
, and attempt to determine from its words the intent of the trial court.  
Stettner Clinic, Inc. v. Burns
, 61 S.W.3d 16, 18-19 (Tex. App.–Amarillo 2000, no pet.).  And, only if the judgment or portions thereof are uncertain, doubtful or reasonably susceptible to more than one meaning, when read as a whole, may we deem it ambiguous.  
McKnight v. Trogdon-McKnight
, 132 S.W.3d at 131.  

I readily concede that the judgment directs Kenneth Hammit to “sell the [community homestead] within five years from the date of the decree . . . pay the balance of the debt owed on said property and [divide] the balance ... between [himself] and Misty . . . Hammit equally.”  If that were the only provision dealing with the community homestead, I would have to consider it clear and unambiguous.  Simply put, Kenneth would be obligated to sell the property and divide the net proceeds with his ex-wife.  Yet, the judgment contains another provision dealing with the very same parcel of realty and, the rules of construction prevent us from ignoring it.  The provision of which I speak grants the homestead to Kenneth “as his sole and separate property” and divests Misty of “all right, title, interest, and claim in” it.  By according those words their plain meaning, one could not but reasonably conclude that between Kenneth and Misty, the latter no longer had any claim to or interest in the property.  So, what appeared in the original judgment were two provisions concerning the homestead, one of which grants Misty an interest in it upon its sale while the other divests her of all interest in it.  Given this, I find the judgment to be susceptible to two reasonable yet contradictory provisions and, therefore, ambiguous.  So, being ambiguous, the provisions were subject to clarification in accordance with the trial court’s original intentions.

Next, the record indicates that the trial court recalled little about why it disposed of the homestead as it did.  Nonetheless, the trial judge stated, of record, that his “main focus on both sides was the children.”  To this he added:  “. . . normally I feel like the kids ought to stay in the house because that’s the least destructive way to go.  And I wouldn’t have put any restrictions on when you have to sell it or pay it off because I feel like the kids need to be in a familiar environment.”  Though both Kenneth and Misty were awarded joint conservatorship over their children, Kenneth was granted the power to establish their primary residence.  In other words, the children were to live with him.  This, along with the trial judge’s clarification order nullifying Kenneth’s obligation to sell the house and share the proceeds with Misty, comports with the trial court’s stated intent to allow the children to remain in the house without “any restrictions.” 

Additionally, locating within the section of the judgment entitled “Owelty of Partition” the paragraph that obligated Kenneth to sell the house is also informative.  Through the other paragraphs under that section the trial court not only evinced its intent to place an encumbrance upon the homestead to secure payment of only the $7,629 in owelty but also created such an encumbrance.  It seems rather logical to infer that the trial court had an interest in assuring that the owelty was paid, and requiring that it be paid through the sale of the homestead (if not the debt was not otherwise satisfied) is a practical means of effectuating that desire.  And, this would explain why it ordered Kenneth to sell the house in five years and pay the debts due Misty.   

So when I combine the reason for ordering the sale of the house with the trial court’s customary intent to give the house (without any time restrictions) to the parent who keeps the children, I conclude that the trial court originally intended to actually award the home to Kenneth (who has the children) in fee subject to loss only upon his failure to pay the owelty within five years.  And, the clarifying order at issue fulfills that intent since Kenneth paid the owelty.  Thus, he need not sell the homestead and divide the proceeds with Misty.

Accordingly, I too vote to affirm the trial court’s clarification order.

Brian Quinn

          Chief Justice