

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00010-CV

———————————————

J.K., Appellant

V.

A.K., Appellee

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 16-04048-16

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

This is an appeal from the October 12, 2018 "Final Judgment On Petition For Enforcement Of The Agreed Final Decree Of Divorce." After ex-husband Appellant J.K. (Jeff) and ex-wife Appellee A.K. (Angie) filed competing motions to enter judgment, the trial court rendered judgment on Jeff's proposed order (the enforcement judgment). The enforcement judgment included a section stating that it "clarified" the final divorce decree's provision that divided Jeff's bonuses by replacing the term "tax bracket" with the phrase "effective tax rate" for the purpose of calculating the amount of the payments to Angie. Jeff now appeals, arguing that because the substituted terms were inconsistent, the enforcement judgment was not simply a clarification but rather was a modification and that, consequently, the trial court lacked jurisdiction to make the substitution because its plenary power over the final decree of divorce had expired. The primary question that we decide is whether substituting the phrase "effective tax rate" for "tax bracket" constitutes a clarification or a modification. Because we conclude that the substitution was a clarification, we hold that the expiration of the trial court's plenary power did not affect its continuing jurisdiction to clarify and enforce its prior judgment. We therefore affirm.

## II. Background

The trial court rendered the agreed final decree of divorce on February 1, 2017.

The sole provision from the final decree that is at issue in this appeal is as follows:

**<u>Provision for Division of Husband's LTI and CEO Bonuses</u>**

IT IS ORDERED AND DECREED that the following provisions for division of [Jeff's] LTI and CEO bonus payments are divided and shall be paid to [Angie] within seven (7) days of [Jeff's] receipt of those awards as follows:

1. The total sum of Seventy-Five Thousand Dollars and no/100 ($75,000.00) anticipated to be paid on March 14, 2017;

2. The total sum of Twelve Thousand and Five Hundred Dollars and no/100 ([$]12,500.00) anticipated to be paid on March 14, 2017;[1]

3. The total sum of Sixty Thousand Dollars and no/100 ($60,000.00) anticipated to be paid on March 14, 2018; and

4. The total sum of Sixty Thousand Dollars and no/100 ($60,000.00) anticipated to be paid on or before March 14, 2019.

IT IS ORDERED that [Jeff] shall provide [Angie] a 1099 tax statement for each payment listed above made by [Jeff] to [Angie] on or before the US National Tax Statement Submission, if allowed by [Jeff's] employer. IT IS ORDERED that [Jeff] is to inquire if this is possible from his employer and notify [Angie] of the response from his employer. *In the event [Jeff] is unable to provide [Angie] [a] 1099 tax statement for payments made, then the payments made to [Angie] shall be the amounts above net of taxes paid in [Jeff's] tax bracket.* [Emphasis added.]

---

[1]The total pretax amount of the two March 2017 bonus payments that Jeff was required to pay Angie was $87,500, which is the sum of the first two bonus payments. The trial court referred to this total rather than to the two individual bonus amounts.

In May 2018, Angie filed a petition for enforcement of the final decree, and she filed an amended petition the following month. In her amended petition, she argued that Jeff had failed to transfer the 2017 LTI and CEO bonus payments to her as required by the final decree.[2] Specifically, she argued that "[r]ather than dividing the bonuses 'net of taxes paid in [Jeff's] tax bracket,' [Jeff] . . . [had] divided them based upon what he [had] received after taxes were withheld by his employer at a much higher rate than his effective tax rate." Angie sought a money judgment for Jeff's alleged failure to pay her the specified amounts of his 2017 LTI and CEO bonus payments net of his effective tax rate. Angie's amended petition for enforcement also requested that the trial court enter a clarifying order if it found that any part of the final decree was not specific enough to be enforced by contempt. Jeff filed an answer to Angie's petition for enforcement of the final decree and denied the allegations.

During the hearing on Angie's petition for enforcement, Jeff admitted that he had "netted out some money from [the March 14, 2017 LTI and CEO bonus] payments." Jeff testified that he had withheld 39.6 percent from the amount of his 2017 LTI and CEO bonus payments that he had paid to Angie and that he had paid taxes on those bonuses at only 32.5 percent. Jeff further testified that his adjusted gross income for 2017 was over $600,000 and that his effective tax rate was 32.5

_____

[2]The record demonstrates that Jeff's 2017 LTI payments were $170,750 and that his 2017 CEO bonus payments were $42,688. The references in the opinion to the 2017 LTI and CEO bonus payments are only to the specified amounts of the bonus payments that Jeff was required to pay to Angie under the agreed final decree.

percent. The record demonstrates that a portion of Jeff's income was taxed in every tax bracket.[3] After the enforcement hearing, the parties filed competing motions for the trial court to render a final judgment.

The trial court signed the proposed final judgment submitted by Jeff,[4] granting Angie a judgment against Jeff for $6,212.50[5] and $3,000 for Angie's attorney's fees. The enforcement judgment[6] also ordered that the "Provision for Division of Husband's LTI and CEO Bonuses" in the final decree of divorce was "clarified by

---

[3]The document from H&R Block that Jeff submitted during the enforcement hearing explains tax brackets:

> Tax brackets are progressive: as you make more money, you get pushed into higher tax brackets that apply to specific amounts of income. For example, a single taxpayer with $50,000 of taxable income in 2011 will pay 10 percent on the first $8,500, 15 percent on income between $8,501–[$]34,500[,] and so on. The "50,000[th]" dollar falls within the 25-percent tax bracket ($34,501–[$]83,600).

[4]At the hearing on the competing motions to enter judgment, Jeff's counsel stated, "I believe that my language does not change the effect of the Court's ruling. I think it simply makes it a complete recitation of the underlying decree."

[5]This amount represents the difference between the amount that Jeff paid to Angie ($87,500 less taxes calculated using the 39.6 percent tax bracket) and the $87,500 less taxes calculated using the effective tax rate. *See generally* Tex. Fam. Code Ann. § 9.010(b) ("If a party did not receive payments of money as awarded in the decree of divorce or annulment, the court may render judgment against a defaulting party for the amount of unpaid payments to which the party is entitled."). Jeff does not argue on appeal that this calculation is incorrect, only that it is unnecessary if the final divorce decree's term of "tax bracket" is used.

[6]For brevity, we refer to this judgment as the enforcement judgment, but as explained throughout the opinion, the enforcement judgment contains a clarification order.

5

this Final Judgment as follows: . . . . In the event [Jeff] is unable to provide [Angie] [a] 1099 tax statement for payments made, then the payments made to [Angie] shall be the amounts above net of taxes paid in [Jeff's] *effective tax rate.*" [Emphasis added.] The trial court also entered findings of fact and conclusions of law:

> 2. The Final Decree provided for the division of Husband's LTI (long-term incentive) and CEO Bonuses, including a requirement that Husband pay Wife the sum of $87,500 within seven (7) days following Husband's receipt of bonuses anticipated on March 14, 2017.

> 3. The Final Decree also ordered Husband to inquire whether he could provide Wife an IRS Form 1099 tax statement for these payments from his employer. In the event that Husband could not obtain such a tax statement, Husband was required to make the payments to Wife "net of taxes paid in [Husband's] tax bracket."

> 4. Husband could not obtain an IRS Form 1099 tax statement from his employer for Wife.

> 5. The highest tax bracket in which Husband paid taxes on any of his income for tax year 2017 was 39.6%.

> 6. The progressive federal income tax system requires payment of taxes in various brackets based upon how much income a taxpayer receives, and Husband paid taxes on some portion of his income in every tax bracket. The very top marginal tax bracket under the tax code for tax year 2017 was 39.6%.

> 7. Husband's effective tax rate for tax year 2017 was 32.5%, meaning, Husband paid tax to the Internal Revenue Service that equaled 32.5% of his income.

> 8. Husband distributed the 2017 bonuses to Wife in the amount of $52,850. This amount was calculated by taking the total amount of bonuses of $87,500, and reducing it by 39.6%, the highest tax rate applied to any portion of Husband's income in 2017.

6

9. Husband did not pay a tax rate of 39.6% on his entire income for tax year 2017.

10. The payment of $52,850 was $6,212.50 less than the bonus amount due to Wife "net of taxes paid" by Husband.

11. The total payment due from Husband to Wife for the 2017 bonuses, calculated by applying his effective tax rate of 32.5% to the amount of $87,500, is $59,062.50.

12. Satisfaction of the terms of the Final Decree requires that Husband make an additional payment to Wife of $6,212.50 in connection with his 2017 LTI and CEO bonuses.

. . . .

14. Unless otherwise ordered, Husband will continue to distribute the LTI and CEO bonuses identified in the Final Decree to Wife, less a percentage of those bonuses equal to the top marginal tax bracket, rather than the net of actual taxes paid, as required by the Final Decree.

15. Satisfaction of the terms of the Final Decree requires that Husband pay Wife $60,000, reduced at his effective tax rate for tax year 2018, less any payments already made by Husband in satisfaction of this obligation, in connection with his 2018 LTI and CEO bonuses.

16. Satisfaction of the terms of the Final Decree requires that Husband pay Wife $60,000, reduced at his effective tax rate for tax year 2019, in connection with his 2019 LTI and CEO bonuses.

## II.

## Conclusions of Law

1. The progressive federal income tax system requires payment of taxes in various brackets based upon how much income a taxpayer receives.

2. Husband paid taxes on some portion of his income in every tax bracket. The very top marginal tax bracket under the tax code for tax year 2017 was 39.6%.

3. Husband did not pay a tax rate of 39.6% on his LTI and CEO bonuses for 2017. Husband paid an effective tax rate of 32.5% on his LTI and CEO bonuses for 2017.

4. The Final Decree requirement that Husband distribute all LTI and CEO bonuses for 2017, 2018, and 2019 to Wife "net of taxes paid in [Husband's] tax bracket" requires (and to the extent necessary, is clarified to state) that Husband distribute all LTI and CEO bonuses reduced at Husband's effective tax rate.

5. The Final Decree requires, for the 2018 bonuses already distributed by Husband to Wife, that Husband pay Wife any difference between the payment Husband has already made for 2018, and $60,000, net of any taxes paid at Husband's effective tax rate for 2018.

6. The Final Decree requires, for the 2019 bonuses required to be paid by Husband to Wife, that Husband pay Wife $60,000, net of any taxes paid at Husband's effective tax rate for 2019.

7. The Final Decree requires, for the 2017 bonuses to be paid by Husband to Wife, that Husband pay Wife an additional sum of $6,212.50.

. . . .

11. Any finding of fact more appropriately deemed a conclusion of law shall be considered as such, and any conclusion of law more appropriately deemed a finding of fact shall be considered as such.

After hiring new counsel, Jeff filed a motion for reconsideration or, in the alternative, motion for new trial, arguing that the trial court could not alter the final decree by substituting "effective tax rate" for "tax bracket" because that change was not simply a clarification of the final decree but was a modification that was made

after the trial court's plenary power had expired. Angie filed a response to Jeff's motion. In her response, Angie argued that the invited-error doctrine barred the relief sought by Jeff because his counsel had "argued vociferously in favor of *his own* proposed Judgment and *against* [Angie's] proposed Judgment."

The trial court held a hearing on Jeff's motion during which Jeff's new counsel argued that the enforcement judgment's change to the language in the LTI and CEO bonus provision from the final decree was not a clarification because "effective tax rate" and "tax bracket" are not consistent with one another. Jeff contended that the change was not a clarification because a clarification can be made only when the final decree is ambiguous; Jeff pointed out that Angie had stated in her petition for enforcement that the final decree was unambiguous. Jeff thus argued that the change constituted a modification and that the trial court did not have jurisdiction to modify the final decree a year and a half after it was rendered. Angie responded that the change to the language in the LTI and CEO bonus provision from the final decree was not a modification but instead was a clarification because Jeff had paid taxes in every single bracket under the Internal Revenue Code. Angie's counsel explained,

> if the Court had left this decree unclarified, then the Court would simply be giving [Jeff] fiat to decide in which of the tax brackets in which he pays taxes under our progressive tax system he could net out his payment to [Angie], which is exactly what he did. He chose the tax bracket that was most favorable to him. Keep in mind, the decree doesn't say which tax bracket to assess against the payment.
>
> He chose the top one. Of course [Jeff] doesn't pay taxes, [on] all of his income, in the top marginal tax bracket. He certainly would have

paid a lot more taxes had he done so. That is not how our progressive tax system works.

So Your Honor took the decree into account, heard the evidence of all the parties, decided that the decree itself as it related to that payment term was vague and clarified it, which is exactly what . . . [Angie] was asking Your Honor to do.

The trial court stated that it could "on its own determine that there are terms that are ambiguous in language" and ultimately denied Jeff's motion. Jeff then perfected this appeal.

## III. The Trial Court Retained Continuing Subject-Matter Jurisdiction to Clarify and Enforce the Final Decree

In his sole issue, Jeff argues that the trial court could not modify the final decree after the expiration of its plenary power. Specifically, Jeff argues that the enforcement judgment was not simply a clarification of the final decree because the substitution of "effective tax rate" for "tax bracket" made the enforcement judgment inconsistent with the final decree.

### A. Standards of Review

We review the trial court's ruling on a motion for enforcement or clarification of a divorce decree under an abuse-of-discretion standard. *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, pet. dism'd). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules or principles. *Id.*

10

In family law cases, legal and factual sufficiency challenges do not constitute independent grounds for asserting error, but they are relevant factors in determining whether the trial court abused its discretion. *In re C.M.F.*, No. 05-16-01385-CV, 2018 WL 3829262, at *4 (Tex. App.—Dallas Aug. 13, 2018, no pet.) (mem. op.). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its application of that discretion. *Id.* A trial court's findings are reviewable for legal and factual sufficiency of the evidence under the same standards that are applied in reviewing evidence supporting a jury's answer. *Id.* In evaluating a legal sufficiency challenge, we credit evidence that supports the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* In a factual sufficiency review, we examine all the evidence in the record and will reverse only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Id.* (citing *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016)).

## B. Applicable Law

A trial court retains continuing subject-matter jurisdiction to clarify and to enforce a divorce decree's property division. *See* Tex. Fam. Code Ann. §§ 9.002, 9.006, 9.008. A party affected by a divorce decree may seek to enforce and clarify the decree's property division by filing an enforcement and clarification motion. *See id.* § 9.001(a) (setting forth procedure for enforcement of decree), § 9.006(a) (allowing court to render further orders to enforce the property division made or approved in the decree of divorce or to clarify the prior order). And the trial court may render further orders to assist in the implementation of, or to clarify, its prior order if such order is ambiguous. *See id.* §§ 9.006(a), 9.008(b) (stating that court may enter a "clarifying order" to enforce compliance with an insufficiently specific decree); *see also In re Marriage of Manor*, No. 07-16-00143-CV, 2018 WL 1415407, at *2 (Tex. App.—Amarillo Mar. 21, 2018, pet. denied) (mem. op.); *Murray*, 276 S.W.3d at 144. Such orders "may more precisely specify how the previously ordered property division will be implemented so long as the substantive division of the property is not altered." *Marriage of Manor*, 2018 WL 1415407, at *2 (citing Tex. Fam. Code Ann. § 9.006(b)). To determine whether a subsequent order clarifies or modifies a decree, "we must interpret the decree to determine not what the trial court should have done but, if possible, what the trial court actually did." *Murray*, 276 S.W.3d at 144 (quoting *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003)).

We interpret a divorce decree as we do other court judgments and construe it as a whole to harmonize and give effect to the entire decree. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009). If the decree is unambiguous, this court must adhere to the literal language used. *Id.* If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and the court will construe it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). But a latent ambiguity may exist when a contract is facially unambiguous but fails as applied to the subject matter because of a collateral matter.[7] *Zeolla v. Zeolla*, 15 S.W.3d 239, 242 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282–83 (Tex. 1996) (per curiam). The latent ambiguity must become apparent when the contract is read in the context of surrounding circumstances. *See Coker*, 650 S.W.2d at 393–94 (analyzing an agreement that obligated a man to pay his wife $25,000 from periodic payments he was owed on a debt and concluding that third-party debtor's subsequent default created a latent ambiguity because the agreement was silent as to whether the man's obligation was contingent upon his actually receiving the payments). If the contract is ambiguous, it is interpreted by reviewing both the decree as a whole and the record. *Hagen*, 282 S.W.3d at 901.

---

[7]We construe an agreed divorce decree according to the rules governing the construction of contracts. *In re K.K.W.*, No. 05-16-00795-CV, 2018 WL 3968475, at *4 (Tex. App.—Dallas Aug. 20, 2018, pet. denied) (mem. op.) (citing *Perry v. Perry*, 512 S.W.3d 523, 527 (Tex. App.—Houston [1st Dist.] 2016, no pet.), and *In re R.F.G.*, 282 S.W.3d 722, 725 (Tex. App.—Dallas 2009, no pet.)).

Whether a divorce decree is ambiguous is a question of law subject to de novo review. *Id.* at 901–02. Moreover, "[e]ven if none of the parties assert that a contract is ambiguous, a court may determine that it is ambiguous . . . ." *See Talisman Energy USA Inc. v. Enduring Res., LLC*, No. 01-13-00357-CV, 2014 WL 4219514, at *4 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, pet. denied) (mem. op.) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam) (op. on reh'g), and *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993)).

## C. Analysis

### 1. Whether the decree is ambiguous

Because a trial court retains continuing jurisdiction to clarify a divorce decree's property division if it contains an ambiguity, we must first determine whether the challenged bonus provision was ambiguous. At the outset, we note that although Jeff contends that "[t]he term 'tax bracket' is hardly ambiguous" and supports his argument with the statement from Angie's petition for enforcement that the "Decree is clear and unambiguous," the trial court was not bound by the parties' assertions that the decree was unambiguous. *See id.*

The agreed decree specified that the bonus payments that Jeff was required to make to Angie were to "be the amounts above net of taxes paid in [Jeff's] *tax bracket.*" [Emphasis added.] The phrase "net of taxes paid" indicates that Angie was to receive whatever portion of the specified bonus amount that remained after Jeff had paid

14

taxes on the bonus payments; this language was all that was necessary. An ambiguity

was introduced by the use of the term "tax bracket." Moreover, the decree was silent

as to which tax bracket should be applied to the bonus payments. Because the

testimony at the enforcement hearing demonstrated that a portion of Jeff's 2017

income was taxed in each tax bracket, a latent ambiguity existed in the decree. *See, e.g.,*

*Nat'l Union Fire Ins.*, 907 S.W.2d at 520 & n.4 (explaining that a latent ambiguity would

exist if a contract called for goods to be delivered to "the green house on Pecan

Street," but there were in fact two green houses on Pecan Street). Due to the

uncertainty occasioned by the multiple tax brackets in which Jeff paid taxes, the

decree, although unambiguous on its face, contained a latent ambiguity.[8] *See Seabron v.*

*Seabron*, No. 04-12-00482-CV, 2013 WL 4685440, at *4 (Tex. App.—San Antonio

Aug. 30, 2013, pet. denied) (mem. op.) (concluding that the decree contained a latent

ambiguity because although the award of "gross present and future military

---

[8]In a footnote to the ambiguity argument in Jeff's brief, he includes one sentence reasserting the argument from his motion for new trial "that there is no evidence, insufficient evidence, or factually insufficient evidence that the term 'tax bracket' is ambiguous" and a second sentence reiterating that Angie did not argue in response to his motion for new trial that the term "tax bracket" is ambiguous. Even assuming that this two-sentence argument meets the requirements of Texas Rule of Appellate Procedure 38.1(i)—requiring a brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities"—we conclude that the trial court had sufficient evidence upon which to exercise its discretion and that the trial court did not abuse its discretion because the evidence is legally and factually sufficient to show that the decree contained a latent ambiguity. *See* Tex. R. App. P. 38.1(i); *cf. Beacon Nat'l Ins. Co. v. Glaze*, 114 S.W.3d 1, 6 (Tex. App.—Tyler 2003, pet. denied) ("The Policy's provisions for an insured's 'Duties After Loss' are reasonably susceptible to more than one interpretation; therefore, the trial court did not err in finding that those provisions were ambiguous.").

retirement" was unambiguous on its face, the fact that the Uniformed Services Former Spouses' Protection Act prohibited the division of anything but disposable retired pay rendered the decree ambiguous and therefore incapable of enforcement); *Zeolla*, 15 S.W.3d at 242 (holding that in light of the uncertainty created by spouse's early retirement at age 57, the consent judgment contained a latent ambiguity).[9] Because the decree contained a latent ambiguity—a prerequisite that enables a trial court to clarify its prior judgment—we hold that the trial court retained continuing jurisdiction to enter a clarification order. *See* Tex. Fam. Code Ann. § 9.008(b); *Marriage of Manor*, 2018 WL 1415407, at *5; *Zeolla*, 15 S.W.3d at 242.

## 2. Whether the Substitution of Terms Constitutes a Clarification or a Modification

Because we have found that the agreed final decree contains a latent ambiguity, which triggers the trial court's continuing jurisdiction to enter a clarification order, we now turn to whether the substitution of the tax terms constitutes a clarification or a modification. As set forth above, in order to constitute a clarification order rather than a modification the substantive division of the property must not be altered. *See Marriage of Manor*, 2018 WL 1415407, at *2 (citing Tex. Fam. Code Ann. § 9.006(b)). We therefore continue our analysis by examining whether the substitution of terms

---

[9]We note that the decree required Jeff to make the specified bonus payments to Angie within seven days of his receipt of the bonuses. Jeff did not object to this timing provision in the trial court, nor does he challenge the timing provision on appeal as it relates to determining the effective tax rate to apply.

constituted a substantive change to the property division set forth in the agreed final decree.

### a. Was there a substantive change?

Within his sole issue, Jeff cites to provisions from the Texas Family Code stating "that a clarification order 'may not change the substantive provisions' in the decision [that] is being clarified"; "that a 'substantive change made by a clarification order is not enforceable'"; "that an enforcement order 'may not change the substantive division of property'"; and that an enforcement order that changes the actual, substantive division of property made in a final decree is unenforceable. *See* Tex. Fam. Code Ann. § 9.007 (governing enforcement orders), § 157.423 (governing clarification orders). Based on those Family Code provisions, Jeff argues that the trial court's substitution of the phrase "effective tax rate" for "tax bracket" constitutes a change to a substantive provision of the final decree and that the enforcement judgment is therefore unenforceable.[10]

The agreed decree provides that Angie is to receive a discrete portion of the LTI and CEO bonus payments, net of taxes paid. When read as a whole, the decree does not reflect an intent to award Jeff any portion of the specified bonus amounts.

---

[10]In a footnote, Jeff argues, "If an enforcement order—by changing the terms being used—results in a different dollar amount of a bonus being paid from one spouse to the other spouse, that would necessarily constitute a change to a substantive provision." But Jeff cites no authority to support this statement and does not explain how the use of "effective tax rate" in the enforcement judgment could have substantively changed the property division when he was not awarded in the agreed final decree any portion of the specified bonus amounts.

17

*See Brown v. Brown*, 236 S.W.3d 343, 350 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (stating that the decree as a whole and the circumstances surrounding its formation "reveal an affirmative intent that [husband] not be awarded anything from the [401(k)] plan and that [wife] receive all of it"). Similarly, there was no testimony at the enforcement hearing demonstrating an intent to award Jeff any portion of the specified bonus amounts. It would therefore be contrary to the decree to interpret the bonus provision as permitting Jeff to keep or to utilize any portion of the specified bonus amounts by withholding more taxes than he actually paid on them.[11] The trial court needed to clarify the decree to make sure that Angie received the negotiated portion of Jeff's LTI and CEO bonus payments. Thus, by substituting the phrase "effective tax rate" for "tax bracket" in the enforcement judgment, the trial court carried out what the parties actually did in the agreed final decree; the trial court did not impose a new obligation on Jeff. *See Murray*, 276 S.W.3d at 144 (stating that we look at what the trial court actually did in the decree); *see also Wallace v. Wallace*, No. 04-17-00557-CV, 2018 WL 5808327, at *4 (Tex. App.—San Antonio Nov. 7, 2018, pet. denied) (mem. op.) ("The subsequent clarification order specified the manner in

---

[11]Jeff denied that he had kept the difference between the effective tax rate of 32.5 percent and the 39.6 percent tax bracket that he had used to calculate the amount that he had paid Angie. When Angie's counsel tried to get Jeff to explain what had happened to the difference, Jeff responded, "It actually went to the government. . . . That all went to the Federal Government." When Angie's counsel asked Jeff if the money that was netted out was used to subsidize his overall tax payment for 2017, Jeff said, "Well, on the basis of it being a marginal tax rate, it demonstrates that all that money actually went to the Federal Government."

which [husband] was to pay for these benefits and did not impose a new obligation on him."). Moreover, the substitution of terms does not constitute a substantive change, nor does it change the actual, substantive division of property. *See Marriage of Manor*, 2018 WL 1415407, at *5 ("[W]e do not perceive that the trial court effected an impermissible substantive change in the division of the tract by clarifying which of two means of accomplishing the division the parties, and the trial court in its agreed decree, intended."); *Seabron*, 2013 WL 4685440, at *4 (holding that clarification of "gross present and future military retirement" did not alter the essential proportional division of the military retirement benefits); *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 819 (Tex. App.—Dallas 2008, no pet.) (holding that trial court's clarification order did not impermissibly modify division of property by requiring husband to pay taxes, penalties, and interest owed on wife's federal income tax obligation because money owed resulted from husband's actions); *Zeolla*, 15 S.W.3d at 242 (upholding clarification order because "[o]n the record presented to us, we do not perceive that [husband's] extant obligations to pay retirement benefits were altered"); *see also Garcia v. Alvarez*, 367 S.W.3d 784, 787–88 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Ordering the return of the $3,000 that was rightfully [husband's] under the agreed property division did not amend, modify, alter, or change the division of property."). Instead, the trial court's substitution of terms more precisely specifies (clarifies) how the previously ordered property division is to be implemented. *See* Tex. Fam. Code Ann. §§ 9.006(a), 9.008(b); *Wallace*, 2018 WL 5808327, at *5 (holding that clarification

19

order did not impermissibly modify the terms of the divorce decree but merely assisted in the implementation of the decree and clarified the terms in question).

### b. Was the clarification consistent with the decree?

Jeff cites case law stating that "[a] clarification order must be consistent with the prior judgment." *See DeGroot v. DeGroot*, 369 S.W.3d 918, 922 (Tex. App.—Dallas 2012, no pet.); *see also McKnight v. Trogon-McKnight*, 132 S.W.3d 126, 130 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("A valid clarification order is consistent with the divorce decree . . . ."). He then argues that any clarification must be consistent with the prior judgment and that the substitution of the phrase "effective tax rate" for "tax bracket" made the enforcement judgment inconsistent with the agreed final decree. Jeff's consistency argument focuses solely on the definition of the two terms.

Although Jeff's statement of the law on clarification orders is correct, his argument takes too narrow a view of the consistency required for clarification orders. The two terms at issue—"tax bracket" and "effective tax rate"—have different meanings. But that alone does not automatically make a clarification order inconsistent with the final decree. Here, as explained above, the substitution of the phrase "effective tax rate" for "tax bracket" was necessary to precisely specify how the previously ordered property division was to be implemented because Jeff did not pay taxes in a singular tax bracket but rather paid taxes on a portion of his income in every tax bracket. The substitution of terms in the clarification order was also necessary to carry out the parties' intent, as evidenced in the agreed final decree, that

20

Jeff was not to receive any portion of the specified bonus amounts that were awarded to Angie. We therefore conclude that the substitution of terms did not cause the clarification order to be inconsistent with the final decree. *See, e.g.*, *Vanloh v. Vanloh*, No. 03-08-00017-CV, 2008 WL 3984373, at *2 (Tex. App.—Austin Aug. 28, 2008, no pet.) (mem. op.) ("Contrary to [wife's] assertions, however, the clarification of the [qualified domestic relations order (QDRO)] accurately reflects the property division as set out in the divorce decree and is consistent with the terms of the original QDRO.").

### c. Summary

After reviewing the decree as a whole, we hold that the substitution of terms regarding how to tax Jeff's bonus payments constitutes a clarification, not a modification, and that such clarification enabled the trial court to enforce its prior judgment—the agreed final decree. We further hold that the trial court did not abuse its discretion by entering the clarification order.

### 3. Whether Sufficient Evidence Supports the Trial Court's Findings

In the remainder of his sole issue, Jeff argues that the trial court's findings of fact 11–12 and 14–16 and conclusions of law 4–7 are erroneously predicated on the use of the phrase "effective tax rate" rather than "tax bracket." Our analysis above reflects that the trial court had sufficient evidence upon which to exercise its discretion and did not err in its application of that discretion when it made the substitution of terms. We therefore hold the evidence legally and factually sufficient

21

to support the trial court's use of the phrase "effective tax rate" in findings of fact 11–12 and 14–16 and conclusions of law 4–7.

Jeff also individually challenges finding of fact 2, which states that "[t]he Final Decree provided for the division of Husband's LTI (long-term incentive) and CEO Bonuses, including a requirement that Husband pay Wife the sum of $87,500 within seven (7) days following Husband's receipt of bonuses anticipated on March 14, 2017." Specifically, Jeff argues that "finding of fact number 2 wholly fails to reflect that the $87,500 [bonus payment] is required to be reduced to reflect taxes, pursuant to **both** the February 2017 Final Decree and the October 2018 Enforcement." Jeff's argument fails to construe the findings of fact as a whole.

A review of the final decree demonstrates that the trial court ordered

> that the following provisions for division of [Jeff's] LTI and CEO bonus payments are divided and shall be paid to [Angie] within seven (7) days of [Jeff's] receipt of those awards as follows:
>
> 1. The total sum of Seventy-Five Thousand Dollars and no/100 ($75,000.00) anticipated to be paid on March 14, 2017;
>
> 2. The total sum of Twelve Thousand and Five Hundred Dollars and no/100 ([$]12,500.00) anticipated to be paid on March 14, 2017[.]

It was not until after the four bonus payment amounts were set forth that the decree included a paragraph describing the taxes to be deducted from the bonus payments. Moreover, when the findings of fact are read as a whole, they demonstrate that the trial court expressly provided for taxes to be withheld from the bonus payments

22

during 2017, 2018, and 2019. Specifically, when finding of fact 2 is read in conjunction with finding of fact 3—which states that "[i]n the event that Husband could not obtain such a tax statement, Husband was required to make the payments to Wife 'net of taxes paid in [Husband's] tax bracket.'"—it is clear that the trial court provided for the 2017 bonus payments totaling $87,500 to be paid to Angie net of taxes paid. The trial court had sufficient evidence upon which to exercise its discretion and did not err in its application of that discretion when it set forth the taxes applicable to the 2017 bonus payment in a separate finding of fact from the one specifying the amount of the 2017 bonus payment. We therefore hold the evidence legally and factually sufficient to support finding of fact 2. *See generally Nealy v. Nealy*, No. 13-14-00689-CV, 2016 WL 4045240, at *6 (Tex. App.—Corpus Christi–Edinburg July 28, 2016, pet. denied) (mem. op.) (holding that trial court's findings of fact on the divorce and property division were supported by legally and factually sufficient evidence).

### D. Disposition of Other Arguments and Sole Issue

Because we have held that the trial court's substitution was a clarification, not a modification, of its prior decree, we overrule Jeff's sole issue and need not address Jeff's argument that the invited-error doctrine—which Angie raised in response to Jeff's motion for new trial—cannot confer plenary power on a court that has lost subject-matter jurisdiction. *See* Tex. R. App. P. 47.1.

23

## IV. Conclusion

Having overruled Jeff's sole issue, we affirm the trial court's enforcement judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  November 7, 2019